SAMUEL F. WOODBRIDGE & others *vs.* MAYOR AND ALDERMEN OF CAMBRIDGE.

The St. of 1869, *c.* 111, relating to sewers and drains, confers the power of making and maintaining sewers and drains, and of laying assessments therefor, upon the mayor and aldermen of a city, although by the city charter such power is given to the city council; but an order of the mayor and aldermen for the construction of a sewer is not invalidated by the concurrence therein of the common council; and the mayor and aldermen, without the concurrence of the common council, may make an assessment for the construction of a sewer laid out by the city council before the passage of the act; but a valid order of assessment once made cannot be rescinded at a subsequent meeting, after the warrant has been committed to the city treasurer and notice given to the owners of the assessed estates.

GRAY, C. J. This is a petition for a writ of *certiorari* to quash the proceedings of the mayor and aldermen of Cambridge, assess-

ing upon the estates of the petitioners a proportion of the cost of constructing common sewers in Oxford Street and in North Avenue in that city.

The principal question in the case is, whether the mayor and aldermen were authorized by the St. of 1869, *c.* 111, to lay these assessments without the concurrence of the common council.

Before the passage of this statute, the power of making and repairing drains and common sewers in Cambridge, and of laying assessments upon the estates benefited thereby, was in the city council, consisting, in this as in other cities in the Commonwealth, of two branches, the mayor and aldermen and the common council. Sts. 1846, *c.* 109, § 19; 1859, *c.* 137, § 1.

By the St. of 1869, *c.* 111, § 1, "the mayor and aldermen of any city, and the selectmen of any town, may lay, make and maintain all such main drains or common sewers as they shall adjudge to be necessary for the public convenience or the public health, through the lands of any persons or corporations, and may repair the same from time to time, whenever repair thereof shall be necessary." And by § 4 of the same statute, sections 1, 2 and 3 of *c.* 48 of the Gen. Sts. are repealed, except as to rights and obligations already accrued; "and the remaining sections of said chapter, so far as the same are applicable, shall apply to the laying out of sewers and drains under this act." By those sections, the power of laying assessments for the cost of common sewers is vested in the mayors and aldermen of cities and the selectmen of towns.

The first section of the St. of 1869, *c.* 111, in terms includes "the mayor and aldermen of any city," and was manifestly intended to establish a uniform rule throughout the Commonwealth as to the tribunals which might lay out and repair common sewers and lay assessments for the expense thereof. It was contended in behalf of the petitioners that this statute did not apply to the city of Cambridge, because its charter contained special provisions conferring a similar authority upon the city council. But it was shown by the respondents at the argument that the charters of all the cities in the Commonwealth contained similar special provisions, so that, if the position of the petitioner was

well taken, there would be no city to which the St. of 1869 could apply. The necessary conclusion is that the mayor and aldermen of Cambridge, after that statute took effect, were empowered to lay out common sewers and to lay assessments therefor.

The order of the mayor and aldermen of July 6, 1870, for the construction of a common sewer in North Avenue, was within the power thus conferred upon them, and was not invalidated by the superfluous assent of the common council; and the mayor and aldermen were authorized to assess part of the expense of that sewer upon the estates benefited thereby.

The Oxford Street sewer was laid out by concurrent order of both branches of the city council before the passage of the St. of 1869; and it is argued that therefore the mayor and aldermen had no authority, without the concurrence of the common council, to lay an assessment for the expense of its construction. But this argument is founded upon too narrow an interpretation of the language of the statute. The fourth section does not, as the argument assumes, merely provide that when sewers shall be laid out under this act, the subsequent proceedings shall be according to the sections of the Gen. Sts. c. 48, therein referred to; but that those sections, so far as applicable, " shall apply to the laying out of sewers and drains under this act." The term " laying out " is not here used to distinguish the first stage of the proceedings from the subsequent stages of constructing the sewer and assessing and collecting contributions to the expense thereof, but, by a common figure of speech, as describing the whole proceedings of which the " laying out," strictly so called, is the most important part; just as c. 43 of the Gen. Sts. is entitled, " Of the laying out and discontinuance of highways, town ways and private ways," although it embraces provisions for the assessment and payment of damages. The intention of the legislature appears to us to have been that any orders in the course of proceedings for laying out, constructing and repairing common sewers, and of laying and collecting assessments for the expense thereof, which should be required after the St. of 1869 took effect, might be passed by the mayor and aldermen, without the concurrence of the common council, whether such proceedings were commenced

before or after that statute. The mayor and aldermen of Cambridge had therefore the same power to lay assessments for the expense of the Oxford Street sewer as for that of the sewer in North Avenue.

By the order, passed by the mayor and aldermen on October 18, 1871, to defray in part the expenses of constructing the main drains and common sewers in these and other streets, certain sums were assessed upon the estates benefited thereby, and owned by the persons named in the schedule appended to the order, and a warrant was issued to the city treasurer to levy and collect the sums thus specified. There is nothing in the record to support the suggestion made by the petitioners at the argument, that the mayor and aldermen assumed an erroneous standard of valuation of the estates in question, or assessed the cost of either of the sewers upon any estate not benefited by that sewer. The order of October 18, 1871, was therefore a valid and complete exercise of the authority vested in the mayor and aldermen to lay assessments for the expenses of the sewers in question.

It is alleged in the petition, and admitted by the answer, that a warrant for the collection of the assessments so laid was issued to the city treasurer, and notice of each assessment given to each person whose estate was thus assessed. Any application for a jury by a person aggrieved by such assessment must be made within three months from receiving such notice. Gen. Sts. *c.* 48, § 6. It was doubtless within the authority of the mayor and aldermen, for reasons satisfactory to them, to abate the amount assessed upon any landowner. And if the assessment had not been actually laid, or had been illegal, they might have treated it as null and void, either by vote of rescission or by new proceedings in due form. But after a lawful order of assessment had been passed and had taken effect, a warrant for its execution committed to the city treasurer, and notices given to the owners of the estates assessed, (by reference to the date of which the right to apply for a jury was limited,) it was not within the power of the mayor and aldermen at a subsequent meeting to reconsider or rescind the entire order laying the assessment. *Pond v. Negus*, 3 Mass. 230. *Inglee* v. *Bosworth,* 5 Pick. 498. *Nelson*

v. *Milford*, 7 Pick. 18. The subsequent proceedings of the mayor and aldermen, by which they undertook to revoke or suspend the effect of the order of October 18, 1871, were therefore wholly unauthorized and illegal, and the validity of that order is unaffected thereby.

The conclusion of the whole matter is, that the petitioners show no cause for setting aside the assessment complained of, and that their                                              *Petition must be dismissed.*

*A. B. Wentworth*, for the petitioners.

*E. R. Hoar*, (*J. W. Hammond* with him,) for the respondents.