GEORGE E. MANSFIELD, Jr., *vs.* STEPHEN D. O'BRIEN & others.

Hampden.   May 27, 1930. — May 28, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Springfield. Municipal Corporations,* Election of assessor, Officers and agents.

G. L. c. 39, § 3, governs an election of an assessor by the city council of Springfield under St. 1852, c. 94, § 8, as amended by St. 1873, c. 126, § 2.

There were twenty-five members present at a meeting of the city council of Springfield to choose an assessor for a term of three years pursuant to St. 1852, c. 94, § 8, as amended by St. 1873, c. 126, § 2. Each member answered *viva voce* when his name was called by the city clerk, who acted as clerk of the meeting, and stated the name of the person for whom he voted. There were two candidates. The presiding officer then declared that one of the candidates was chosen by a vote of fourteen to eleven. Certain members thereupon criticized the action of the meeting and others stated that they doubted the vote. No member stated that he doubted the correctness of the record as to his own vote. After a recess, it was voted unanimously that a new roll call be taken. The city clerk then proceeded to take a new

roll call *viva voce* and at the conclusion thereof the presiding officer announced that the other candidate had been chosen by a vote of thirteen to twelve. Two members, who previously had voted for the first candidate and who had not stated that they doubted the correctness of the first tabulation of votes, changed their votes on the second roll call. The meeting subsequently dissolved. Upon a petition for a writ of mandamus by the first candidate to require his recognition as assessor, it was *held*, that

(1) The second roll call was more than a verification of the first: although informal, it was a reconsideration of the first roll call and a new roll call;

(2) The ballot not being secret, it was within the power of the meeting before dissolution to reconsider its action and to take a new vote;

(3) The circumstance, that the presiding officer made a declaration of the result after the first roll call, was not decisive;

(4) The second candidate legally was elected assessor.

PETITION, filed in the Supreme Judicial Court for the county of Hampden on April 1, 1930, for a writ of mandamus commanding the respondents to recognize the petitioner as an assessor of the city of Springfield for a term of three years commencing April 1, 1930.

The respondents were Stephen D. O'Brien, Dwight R. Winter, the mayor of Springfield, and the members of its city council. The case was heard by *Crosby*, J., upon an agreed statement of facts. He allowed a motion by the respondent Winter that the petition be dismissed as to him and reserved the case for determination by the full court.

The case was submitted on briefs.

*H. P. Small*, for the petitioner.

*G. F. Leary*, City Solicitor, *D. E. Lavigne*, Assistant City Solicitor, *& W. A. McDonough*, for the respondents.

RUGG, C.J. This petition for a writ of mandamus is designed to try the title to the office of an assessor of the city of Springfield. The charter of the city of Springfield requires the city council to elect by ballot in joint convention in each year an assessor to hold office for the term of three years from the first of April in the year of election. St. 1852, c. 94, § 8, as amended by St. 1873, c. 126, § 2. It is provided by G. L. c. 39, § 3, that "No election of a city officer by a municipal body or board shall be valid

unless made by a viva voce vote, each member present answering to his name when called by the clerk or other proper officer, stating the name of the person for whom he votes, or that he declines to vote. The clerk or other proper officer shall record every such vote." This provision, first adopted by St. 1899, c. 129, c. 170, was a general law manifestly intended to apply to all cities save those having exceptional charters or other special laws. It must be deemed to control the charter provision of the city of Springfield already referred to. *Logan* v. *Mayor & Aldermen of Lawrence,* 201 Mass. 506, 511. *Cassidy* v. *Transit Department of Boston,* 251 Mass. 71, 74. Compare *Copeland* v. *Mayor & Aldermen of Springfield,* 166 Mass. 498, 504.

The board of aldermen and the common council of the city of Springfield met in joint convention on February 3, 1930, for the purpose of choosing an assessor to hold office for a term of three years from April 1, 1930. The city clerk acted as clerk of the joint convention, having previously prepared and having before him the names of all members of the city council. Each member present voted *viva voce,* answering to his name when called by the city clerk and stating the name of the person for whom he voted. The votes thus recorded by the city clerk disclosed that there were twenty-five members present and voting and that of these votes the petitioner received fourteen and the respondent O'Brien eleven. The presiding officer then announced, "By your vote you have chosen George E. Mansfield, Jr., assessor." Following this there was confusion among the members of the joint convention. When it had subsided two members were recognized by the chair and criticized the action of the session, but neither of them offered any motion. Another member was then recognized and stated that he "doubted the vote." Thereupon a recess was taken. At the expiration of the recess another member of the joint convention arose and doubted the vote. The councilman who had before the recess first doubted the vote on inquiry said that he doubted the tabulation of the city clerk and doubted the vote, and that

he kept a record himself which differed from the record of the city clerk; on his motion it was unanimously voted that a new roll call vote be taken. This then was ordered by the president and the city clerk proceeded as in the first roll call. On information from the city clerk of the result the presiding officer then announced that the vote as tabulated now stood "Stephen D. O'Brien, thirteen, George E. Mansfield, twelve." The record as kept by the city clerk discloses that on the first roll call two members of the convention, neither of whom made any motion or expressed any doubt about the correctness of the first tabulation, voted for the petitioner but on the second roll call voted for the respondent O'Brien, and that no member of the joint convention other than these two voted differently on the second from his vote on the first. The record does not disclose that any member doubted the correctness of the record as to his own personal vote. Other business was transacted and then the convention dissolved. The question to be decided is who on these facts was elected assessor.

It is to be noted that this procedure was something more than a mere verification of the first vote taken. Such verification would have been accomplished by calling anew the roll of members with a statement of the record already made as to the vote of each individual and an inquiry whether that record was in conformity to the vote in truth given *viva voce*. It must be assumed on this present reservation that what happened was a reconsideration of the first roll call and a new roll call had as upon a new election held subsequently to and in pursuance of reconsideration of the first vote. Although the proceedings were informal, the inference is irresistible that this in fact was what took place. *George* v. *School District in Mendon*, 6 Met. 497, 509. *Morse* v. *Dwight*, 13 Allen, 163, 166, 167. Compare *Woodbridge* v. *Mayor & Aldermen of Cambridge*, 114 Mass. 483, 486; *Adams* v. *Townsend Schoolhouse Building Committee*, 245 Mass. 543.

It is a general principle that a parliamentary or deliberative body may during the same sitting treat proceedings

already had as irregular and invalid, or may, unless some right of a third person may have intervened, reconsider action already taken and then take new and different action. This principle has been applied to elections as well as to measures of a more strictly legislative character. That principle had been declared and applied to a variety of situations prior to the enactment of what is now G. L. c. 39, § 3. For example, in *Baker* v. *Cushman*, 127 Mass. 105, this case was presented: there was a requirement that a city clerk be elected by joint ballot of both branches of the city council; on the first ballot, thirty-one members voting, thirty-two votes were cast; this election was declared void without objection, and the convention by unanimous consent at once proceeded to another vote, when thirty-one votes were cast. It was said by Chief Justice Gray at page 106: "It was within the lawful power of the convention, at the same meeting, and before the result of the election had been declared, to treat the proceedings already had as irregular and invalid, and to vote anew. The petitioner therefore acquired no right to the office." The case of *State* v. *Foster*, 2 Halst. 101, was cited as an authority; in that case it was held with respect to successive ballots with different results by a joint meeting of the legislative council and general assembly of the State of New Jersey that the one chosen on the last ballot was elected on the ground that, so long as the joint meeting was in session, it had a right to reconsider any question which had been before the meeting or any vote which had been made. The members did reconsider the vote they had first given, and voted that there should be a reballoting. The result of the final ballot was decided to be controlling. In *Wood* v. *Cutter*, 138 Mass. 149, it appeared that a school committee, required to appoint a superintendent, proceeded to a formal vote by ballot, and a majority of the votes were cast for the petitioner; it was then voted to reconsider the vote and at an adjourned meeting another person was elected. It was held that the last election was valid although it was pointed out that there might be differences between that case and an election required by law to be by secret ballot. It was said,

at page 150, that "no reason has been suggested to us why this vote should not stand on the same footing as any other vote of a deliberative body, and remain subject to reconsideration at the same meeting and before it has been communicated. It begs the question to say that the board had once definitely voted in pursuance of the instructions of the town meeting, and therefore was *functus officio,* and could not reconsider its vote. The vote was not definitive if it contained the usual implied condition, that it was not reconsidered in accordance with ordinary parliamentary practice, and it must be taken to have been passed subject to the usual incidents of votes, unless some ground is shown for treating it as an exception to common rules. Whether the board could have cut down their powers of deliberation by communicating their vote before the meeting was closed, or otherwise, is not a question before us. It is enough to say that an implied condition is as effectual as an express one; and that, in this case, the condition which has been stated must be implied." The same principle was followed in *Reed* v. *School Committee of Deerfield,* 176 Mass. 473, where the statute required that the officer should be chosen by ballot. *Putnam* v. *Langley,* 133 Mass. 204. *Keough* v. *Aldermen of Holyoke,* 156 Mass. 403. See in this connection *Pevey* v. *Aylward,* 205 Mass. 102. The circumstance that the General Court reposed responsibility for the election in the manner pointed out by G. L. c. 39, § 3, upon a legislative or deliberative body is some indication of an intent that, except as has been otherwise expressed, all proceedings should be had in accordance with and subject to the incidents of the ordinary procedure of parliamentary assemblies.

The statute in the case at bar does not require a secret ballot. On the other hand its manifest purpose is to require public declaration by each member of the joint convention of his vote in order that it may be made a matter of record. Such provision is important. It has the salutary effect of fixing upon each member of the convention who takes part in the proceedings his exact responsibility for the election and provides for an unimpeachable record of his

action. Whatever may be said as to the apparent vacillation of members of the council who change their votes under conditions similar to those here disclosed, we think it must be held to be within the power of such a deliberative body as the joint convention here in question to change its mind, and of course this can be brought about only by a change of mind on the part of individual members. *Steckert* v. *East Saginaw,* 22 Mich. 104. See Dillon, Mun. Corp. (5th ed.) § 540. We think that the circumstance that the presiding officer made declaration of the election after the first vote is not decisive. The proceedings covering the two votes constituted a continuous legislative transaction. By the authority of our own decisions it must be held that the respondent O'Brien was elected to the office of assessor. Decisions in other jurisdictions are to the same effect. *People* v. *Davis,* 284 Ill. 439. *Whitney* v. *Van Buskirk,* 11 Vroom, 463. *Eiss* v. *Summers,* 205 App. Div. (N. Y.) 691. *Regina* v. *Mayor &c. of Ryde,* 28 L. T. Rep. 629.

No question of technical parliamentary procedure is presented or considered. See *Wheelock* v. *Lowell,* 196 Mass. 220, 229, 230; *Wood* v. *Milton,* 197 Mass. 531, 533.

*Petition dismissed.*