[Civil No. 1998.  Filed May 26, 1922.]

[207 Pac. 359.]

WILLIAM E. ROWLANDS, Appellant, v. THE STATE LOAN BOARD OF ARIZONA, RAYMOND EARHART, Treasurer of the State of Arizona, THOMAS E. CAMPBELL, Governor of the State of Arizona, and ERNEST R. HALL, Secretary of State of the State of Arizona, as Members of the STATE LOAN BOARD OF ARIZONA; RAYMOND EARHART, as Treasurer of the State of Arizona; and CHARLES W. FAIRFIELD, as Auditor of the State of Arizona, Appellees.

1. STATUTES—TERM "REMIT" IN STATUTE FOR REMISSION OF INTEREST ON LOANS BY STATE DEFINED.—Whether the term "remit," as used in Laws of 1921, chapter 49, permitting interest on loans to erect the Lyman reservoir dam is construed according to its popular

meaning or its "peculiar and appropriate meaning in law" pursuant to Civil Code of 1913, paragraph 5552, it means forgiven or pardoned, and does not simply mean "to defer."

2. SCHOOLS AND SCHOOL DISTRICTS—INABILITY TO PAY INTEREST ON LOANS FROM COMMON SCHOOL FUND HELD NOT TO RESULT IN DEFICIT AND AUTHORIZE TRANSFER OF FUNDS TO COVER IT.—Inability of mortgagors to pay interest due the state on loans to erect the Lyman reservoir dam made from proceeds of the sales of land granted the federal government for common schools, etc., did not result in a deficit in the common school fund, and transference of moneys by the state from the general fund to cover such deficit pursuant to Laws of 1921, chapter 49, remitting interest on such loans, is not authorized by Constitution, article 11, section 10, providing for appropriations in addition to income from investment of such proceeds to insure the maintenance of all state educational institutions.

3. STATES — REMISSION OF INTEREST ON LOANS OF INSTITUTIONAL FUNDS HELD INVALID AS A "DONATION TO INDIVIDUALS."—The remission by Laws of 1921, chapter 49, to mortgagees of interest on loans of institutional funds is a donation to individuals in violation of Constitution, article 9, section 7.

4. PUBLIC LANDS—REMISSION OF INTEREST ON LOANS OF INSTITUTIONAL FUNDS HELD INVALID AS BREACH OF TRUST UNDER CONSTITUTION.—The remission of interest on loans of funds derived from sale of lands granted to the territory and state by the federal government for common schools and other institutions is a violation of Constitution article 10, section 2, making it a breach of trust to dispose thereof for any object other than that for which they were granted, or contrary to the Enabling Act.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Judgment reversed, with directions.

Messrs. Baker & Whitney, for Appellant.

Messrs. Armstrong, Lewis & Kramer, for Appellees.

ROSS, C. J.—During the years 1914, 1915, 1916, 1917, 1918, 1919 and 1920, the State Treasurer, by and with the approval of the Governor and the Secretary of State loaned various sums aggregating $637,600 to various persons, under the Lyman dam project in Apache county, and took mortgages on such

persons' lands situated in said county, as security for such loans. The moneys loaned were the proceeds of sales of institutional lands granted to the territory of Arizona and to the state by the federal government for the common schools and charitable and penal institutions of the state. The loans bear interest at six per cent per annum, and on July 1, 1921, there was due to the state about $30,000 in interest. The annual interest for the subsequent years, up to and including 1924, will be about $38,400.

The fifth legislature (see chapter 49, Laws 1921) passed an act the title and context of which has to do with the interest on said loans, and, as its own language explains quite clearly its purpose, we give it in full:

"An act for the relief of natural persons owning land in Apache county whose property was damaged or destroyed by floods occasioned by the breaking of the Lyman reservoir, and making an appropriation therefor.

"Be it enacted by the Legislature of the state of Arizona:

"Section 1. That because of the construction company's not completing the Lyman dam, and the resulting failure to obtain water which has prevented the growing of crops on the Lyman dam project during the past five years and which will limit the growing of crops for at least another year, the interest due the state of Arizona on the money loaned for the purpose of erecting said dam is hereby remitted until the year 1925, as hereinafter provided.

"Sec. 2. The State Loan Board shall ascertain the amount of interest due on the loan made on the farm lands within the Lyman dam project up to the time this act becomes effective and shall make a claim for the amount so determined upon the State Auditor, who will issue his warrant upon the receipt of such claim for a like amount to be credited to the permanent funds invested on such loans. At the end of each calendar year up to and including 1924 the State Loan Board shall ascertain the amount of interest due and if, in their judgment, similar action is necessary,

shall have authority to grant the same relief to said mortgagors for the calendar year next preceding.

"Sec. 3.    There is hereby annually appropriated out of the general fund, a sufficient sum to carry out the provisions of this act.

"Sec. 4.    All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

The appellant, Rowlands, as a taxpayer of Maricopa county, in his own behalf, and in behalf of others in like situation, brought an action alleging that the above-named appellees, officials of the state, were threatening to, and would, if not enjoined, take from the general fund of the state the moneys belonging to the state, raised by general taxation, and apply the same in payment of the interest due from the mortgagors up to July 1, 1921, and subsequent years as the interest became due and payable.    It is further alleged that said chapter 49 violates various provisions of the Constitution of the state of Arizona (enumerating them) and the fifth and fourteenth amendments to the Constitution of the United States, and is unconstitutional, null and void, and prayed that the appellees be enjoined and restrained from carrying out the terms of said chapter 49.    At a hearing upon the merits of the case, at which the allegations of the complaint were treated as "an agreed statement of facts," the court made and entered its judgment dismissing the complaint.    From this judgment the appellant prosecutes this appeal.

The question for decision is apparent from the above statement of the case.    It is contended by appellant that the legislature exceeded its powers as limited by the state Constitution in the legislation contained in chapter 49, *supra*.    It is obvious that the legislature in passing the act intended to accomplish one of two things, either: (1) To cancel and forgive the payment of the interest due and becoming due on the mortgages the state holds against the various persons under the Lyman dam project up to 1924, in-

clusive; or (2) to lend these debtors out of the state's general fund enough money to pay said interest due and to become due until 1925 in case it was needed. It is the contention of appellant that the act forgives the interest to the debtors, and he bases his reason for so claiming upon the meaning of the word "remitted" and the absence of any provision in the act for the repayment to the state of any advances made by it out of the general fund to meet such interest. That the legislative purpose was to relieve the debtors from ever paying the interest for those years in which the state paid it we have no doubt.

Appellees contend that the word "remit" as used in the text means "to defer" the payment of interest. Webster defines the word:

" . . . To forgive; to pardon; to remove; to refrain from exacting or enforcing; as, to remit the performance of an obligation."

He gives as synonyms:

"To relax; release; abate; relinquish; forgive; pardon; absolve."

Funk & Wagnall's New Standard Dictionary defines "remit":

" . . . To refrain from exacting as a penalty; discharge from; countermand the exaction of; as, to remit a fine . . . to defer or put off; postpone."

34 Cyc.:

"To forgive, to pardon, to release from punishment or penalty."·

Bouvier:

"To annul a fine or forfeiture."

And the same author defines its derivative "remission" as "a release of a debt." In our statute (paragraph 5552, Civ. Code) it is provided:

"In the construction of the statutes of this state, the following rules shall be observed, unless such con-

struction would be inconsistent with the manifest intent of the Legislature, that is to say:

"(1) All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

This we believe to be the general rule, and taking it as our guide, we think the word "remit," whether construed according to its popular meaning or according to its "peculiar and appropriate meaning in law," was employed in the act to convey the idea that the interest was forgiven or pardoned. Though, according to one of the lexicographers, one of its meanings is "to defer," we do not think it was employed in that sense by the legislature in the above act, because, if that was the intention, it seems that the legislature would have provided or stipulated in the act that when, if ever, the interest was collected or collectible from the Lyman dam debtors, it should be paid into the general fund to cover the advances made by the state from that fund in payment of interest. The absence of such a provision was doubtless intentional, conclusively evidencing the purpose of the legislature to relieve the debtors from the obligation ever to repay the state the moneys it might advance in discharging the interest on the mortgages.

Had it been the intention of the legislature to forego the collection of interest for the time being only, and not to forgive it, it is reasonable to assume more apt language would have been used to indicate such intention. It would have empowered the state's agent "to defer, put off, or postpone" the payment of interest to a time certain, in direct and express language.

For another reason, it does not seem that it was the intention simply to give the debtor more time in

which to pay the interest, as the state's agents are given some discretion in the matter, and would doubtless use it, if by doing so the debtors' ability to meet their obligations would be enhanced or improved. In section 116, Land Code (Laws 2d Sp. Sess. 1915, c. 5), it is provided that the Governor and Secretary of State shall place the collection of any loans of institutional funds made by the state in the hands of the Attorney General for appropriate action, ''whenever it shall seem to be for the best interests of the state to do so.'' In view of this authority already possessed by the state's agents, there was no occasion to repeat it, as is contended by appellees was done, by chapter 49, *supra.*

Appellees intimate, without pressing it very hard, that since the mortgagors are unable to pay the interest on loans, a deficit to that extent in the common school fund is the result, and that the transference of money by the state from the general fund to cover such deficit is authorized by section 10, article 11, state Constitution, wherein it is provided that—

''In addition to such income the legislature shall make such appropriations, to be met by taxation, as shall insure the proper maintenance of all state educational institutions, and shall make such special appropriations as shall provide for their development and improvement.''

This contention is not sustainable. Chapter 49 by its title and contents conclusively negatives any such idea. It was enacted ''for the relief of natural persons'' therein described, and not for the common school fund.

The purpose and intent of chapter 49 being, as we have seen, to relieve the mortgagors of land under the Lyman dam project from ever paying or repaying any sums advanced by the state to care for the interest on their mortgages, it only remains to see if such a thing may be done without violating the

fundamental laws of the state or nation. Without deciding whether it violates the federal Constitution or other provisions of the state Constitution, as contended by appellant it does, we think it must be conceded that it runs counter to, and is in conflict with, section 7, article 9, of the state Constitution. This section reads as follows:

"Sec. 7.   Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber, to, or a shareholder in, any company or corporation or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the state by operation or provision of law."

No refinement of reasoning will permit the proposed transaction to pass muster as against this inhibition. When a mortgagee forgives the interest for no other reason than the inability of the mortgagor to pay it, it is a donation, a pure and simple gratuity, unsupported by any consideration, moral or legal. *Patty* v. *Colgan,* 97 Cal. 251, 18 L. R. A. 744, 31 Pac. 1133; *McClure* v. *Nye,* 22 Cal. App. 248, 133 Pac. 1145; *In re Stanford's Estate,* 126 Cal. 112, 45 L. R. A. 788, 54 Pac. 259, 58 Pac. 462.   While the object had in view may be a worthy one, the people, by their Constitution, have said in language, plain and unmistakable, that the public moneys shall not be appropriated by the legislature for that purpose. This restriction upon the power of the legislature cannot be ignored.

The relinquishment of the interest on loans of institutional funds cannot be reconciled with section 2, article 10, of the state Constitution, which reads as follows:

"Sec. 2.   Disposition of any of said lands, or of any money or thing of value directly or indirectly derived

therefrom, for any object other than that for which such particular lands (or the lands from which such money or thing of value shall have been derived) were granted or confirmed, or in any manner contrary to the provisions of the said Enabling Act, shall be deemed a breach of trust.''

The interest and principal must be used for the specific purpose for which institutional lands were granted to the state, or to the territory, before it became a state. The legislature would have as much right to appropriate such funds or the interest thereon for road-building purposes as it would have to give such funds away. Being convinced that the provisions of chapter 49 cannot be carried out, without violating the two sections of the Constitution above quoted (and perhaps others), we must hold that the judgment of the trial court was in error in refusing to enjoin the defendants-appellees from carrying out the terms of said chapter.

The judgment of the lower court is reversed and the cause remanded, with directions that a permanent injunction and restraining order be issued as in the complaint prayed for.

McALISTER and FLANIGAN, JJ., concur.