189 P.2d 209

ETHINGTON et al. v. WRIGHT et al.

No. 4981.

Supreme Court of Arizona.

Jan. 26, 1948.

Charles H. Reed, of Coolidge, for appellants.

John L. Sullivan, Atty. Gen., and John W. Rood, Chief Asst. Atty. Gen., for appellees.

LA PRADE, Justice.

The appellants, hereinafter referred to as plaintiffs, as taxpayers of Pinal County, brought a class suit in the Superior Court of Maricopa County, in behalf of themselves and other taxpayers similarly situat-

384

ed, against the appellees, Wilson T. Wright, W. J. Eden, and Yale McFate, as the then members of and constituting the Corporation Commission of the State of Arizona, Ana Frohmiller, as State Auditor of the State of Arizona, and John L. Sullivan, as Attorney General of the State of Arizona, hereinafter referred to as defendants, for declaratory relief adjudicating Chapter 11, First Special Session, Laws of 1945, to be unconstitutional and void in the respects contended in plaintiffs' complaint and for injunctive relief enjoining defendants from performing any acts or expending any public funds under authority of said Chapter 11.

Defendants filed a motion to dismiss plaintiffs' complaint on the ground that it failed to state a claim upon which relief could be granted and in support of such motion contended that plaintiffs, as such taxpayers, were without sufficient interest to maintain the action; that Chapter 11 was a constitutional and valid enactment, and that it did not affirmatively appear from plaintiffs' complaint that any justiciable controversy existed between plaintiffs and John L. Sullivan as Attorney General and Ana Frohmiller as State Auditor. Plaintiffs now suggest, on this appeal, that if any justiciable controversy ever existed between plaintiffs and the Corporation Commission the same has become moot by reason of a change in the elected personnel of the Commission. Among other things the complaint alleged:

(1) That pursuant to the provisions of said Chapter 11, First Special Session, Laws of 1945, taxes have been levied by the State of Arizona upon real and personal property located in the State of Arizona, including real and personal property owned by the plaintiffs, for the purpose of providing the funds appropriated by said act.

(2) That plaintiffs and all other taxpayers of the State of Arizona are now being damaged and in the future will be damaged by the enforcement of the provisions of Chapter 11, First Special Session, Laws of 1945, in that public moneys will be unlawfully expended and taxes illegally exacted from the plaintiffs and other taxpayers of the State of Arizona if the provisions of said act are enforced.

(3) That the defendants pursuant to the terms of the Act had initiated negotiations with the Federal Power Commission for cooperation with the Commission looking toward the establishment of a rate base, and "That said defendants, as members of and constituting the Corporation Commission of the State of Arizona, are threatening to and unless restrained by this Court will do and perform the acts and things directed and required of them by said Chapter 11, First Special Session, Laws of 1945."

After a hearing upon defendants' motion to dismiss, the court sustained the same without specification of grounds. Thereupon plaintiffs filed notice of their elec-

tion to stand upon their complaint and the court ordered judgment that plaintiffs take nothing by their complaint and for dismissal. This appeal is taken from the judgment entered pursuant to said order.

There having been no specification of grounds for the dismissal of plaintiffs' complaint, plaintiffs have assumed that there were only two grounds or theories upon which the court could have proceeded, and accordingly have submitted only two assignments of error. These assignments are (1) that the court erred in dismissing plaintiffs' complaint upon the ground that plaintiffs as taxpayers were not possessed of sufficient interest to maintain the action; (2) that the court erred in dismissing the complaint and ordering judgment that plaintiffs take nothing for the reason that plaintiffs' complaint states a cause of action for injunctive and declaratory relief since it appears upon the face of such complaint that Chapter 11, First Special Session, Laws of 1945, is unconstitutional and void and that plaintiffs were therefore entitled to the relief prayed for in their complaint.

In support of these assignments of error the following propositions of law were submitted:

Proposition of Law No. 1. A taxpayer of the state may maintain an action on behalf of himself and other taxpayers to prevent the unlawful expenditure of public funds under an unconstitutional statute.

Proposition of Law No. 2. Chapter 11, First Special Session, Laws of 1945, is unconstitutional and void in that it is an encroachment by the legislature on the exclusive powers vested by Article 15 of the Arizona Constitution in the Arizona Corporation Commission to make just and reasonable classifications and just and reasonable rates and charges to be made and collected by public service corporations within the state for services rendered therein, and to make reasonable rules, regulations, and orders regarding classifications, rates, and charges by which such corporations shall be governed in the transaction of business within the state.

Proposition of Law No. 3. Chapter 11, First Special Session, Laws of 1945, is an unconstitutional delegation of legislative powers of the State of Arizona to a federal agency in violation of Article 3 of the Arizona Constitution.

Proposition of Law No. 4. Chapter 11, First Special Session, Laws of 1945, is unconstitutional and void in that it violates the prohibition of the Tenth Amendment of the Constitution of the United States of America that the Federal Government may not exercise the powers reserved to the several states.

Proposition of Law No. 5. Chapter 11, First Special Session, Laws of 1945, is void in its entirety because the constitutional portions thereof are so dependent upon and inseparable from the unconsti-

tutional portions of the act that the removal of the latter does not leave a completed enactment which the legislature may be deemed to have intended to pass independent of the unconstitutional portions.

Appellees have taken up the gauntlet laid down in the first four propositions of law submitted by appellants and have replied thereto, admitting that if any part of Chapter 11 is unconstitutional the entire act must fall. In other words they concede that appellants' proposition of law No. 5 is sound if Chapter 11 is unconstitutional in the respects urged by appellants. With this concept of the law we are in accord. We pointed out in the recent case of Millett v. Frohmiller, 188 P.2d 457, decided Jan. 5, 1948, not yet reported, that the appropriation provided in Chapter 11 could not be separated from the limitation placed upon it. We said:

"Even a cursory reading of Ch. 11 makes it clear that the legislature intended to there provide for a rate survey requiring the services of the Federal Power Commission. To hold that all that was intended was to provide for a rate survey to be made by any persons, group, or agency that the Commission might select would constitute gross judicial legislation. * * * The funds there appropriated are clearly wedded to the use for which they are prescribed. * * *"

In other words the tail goes with the hide; when one of the Siamese twins dies, the other one goes with him.

As additional propositions of law appellees have suggested that (1) it does not affirmatively appear from appellants' complaint that any justiciable controversy exists between them and the attorney general and state auditor; (2) it does not appear that appellants have pleaded any justiciable controversy between the Corporation Commission as presently constituted and appellants. Whether taxpayers such as plaintiffs may properly seek to enjoin the illegal expenditure of state funds presents an inquiry of first impression in this state. In opposition to the proposition that a taxpayer of the state may maintain an action in behalf of himself and other taxpayers to prevent the unlawful expenditure of public funds under an unconstitutional statute, defendants urge that the state as the sovereign stands on such a plane that the activities of its officials even if illegal cannot be restrained at the behest of a taxpayer.

It is now the almost universal rule that taxpayers of a municipality may enjoin the illegal expenditure of municipal funds. See annotations Ann.Cas.1913C, 884, and 36 L.R.A.,N.S., 1. The right to maintain such suits is based upon the taxpayers' equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation. For these and other reasons the courts of this country, with very few exceptions, have held that the same principles which permit a

taxpayer to enjoin the waste or illegal expenditure of municipal funds permit the same kind of proceedings by state taxpayers concerning state funds. The rule allowing such suits finds support in Fergus v. Russell, 270 Ill. 304, 110 N.E. 130, Ann.Cas. 1916B, 1120; Sherman v. Cage, Tex.Civ.App., 279 S.W. 508; Conway v. New Hampshire Water Resources Board, 89 N. H. 346, 199 A. 83; Anderson v. Houts, Tex.Civ.App., 240 S.W. 647. Contra— Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573.

The rule in the Federal Court is that a federal taxpayer may not enjoin the illegal expenditure of federal funds. Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. The holding in the federal cases is based upon the theory that the interest in federal funds of only one of several million federal taxpayers is so minute, indefinite, remote, and constantly changing as to make the administration of a statute calling for additional taxation a matter of public and not of individual concern. On the other hand, the interest of the state taxpayer is much more direct and immediate, and any unlawful expenditure of state funds inevitably results in increasing the tax burden on property subject to ad valorem taxes. In any event, the reasons on which the federal rule is predicated have no application to the case of a state taxpayer whose injury when state funds are illegally expended is immediate and direct.

The allegations of the complaint, challenged only by the motion to dismiss, show that plaintiffs were financially affected by the legislation questioned in that, pursuant to provisions of Chapter 11, a levy had been made on their property to help raise the $50,000 appropriated, and that defendant officials had initiated negotiations looking toward the making of a contract to employ the Federal Power Commission, and would, unless restrained, expend the tax monies raised pursuant to, and for the purpose directed and required by, the Act. It is patent that the impact of the Act had affected plaintiff taxpayers at the time they instituted suit by increasing their taxes, and that they and all others likewise situated would be financially injured if funds raised pursuant to the Act were unlawfully expended. We conclude that they had the right to question the legality of the proposed expenditure.

We believe that in sustaining the right of a taxpayer to question expenditure of state funds on any grounds of illegality or unconstitutionality of the enactment calling for their expenditure we are adopting a salutary rule. In Rowlands v. State Loan Board, 24 Ariz. 116, 207 P. 359, a taxpayer in his own behalf and in behalf of others in like situation brought an action against certain state officials, alleging that they were threatening to and would if not enjoined take from the general fund of the state the monies belonging to the state raised by general taxation and apply

388

the same to payment of debts owed to the state by way of interest from private individuals. The officials sought to be restrained were proceeding under the purported authority of an enactment of the legislature. The right to maintain the suit was not challenged; this court accepted jurisdiction and held the legislation purporting to give away state monies to be unconstitutional.

■ Respecting the propriety of naming the attorney general of the state as a party defendant in an action such as the present one, the provisions of the uniform declaratory judgment statutes appearing as section 27-706, A.C.A.1939, must be considered. The section provides:

"Persons who are necessary parties.— When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the judgment, and no judgment shall prejudice the rights of persons not parties to the proceeding. In a proceeding involving the validity of a municipal ordinance or franchise, such municipality shall be made a party, and if a statute, ordinance or franchise is alleged to be unconstitutional, the attorney-general of the state shall also be served with a copy of the proceeding."

This section has been interpreted by the courts to mean that the attorney general of the state is a proper party defendant in declaratory judgment actions involving the constitutionality of a statute, ordinance, or franchise. School District of Kansas City v. Smith, 342 Mo. 21, 111 S.W.2d 167; Peters v. O'Brien, 152 Tenn. 466, 278 S.W. 660. In such cases the Attorney General must be served with a copy of the proceedings. The object of this requirement is to protect the state and its citizens should the parties be indifferent to the outcome of the litigation. Since the Attorney General has the right to participate in such proceedings in behalf of the state, we conclude that it was not error to include him as a party defendant.

■ The state auditor was properly named as a party defendant for the reason that a plaintiff seeking a judicial determination by means of a declaratory judgment action should name as parties defendant all who have a right to defend the action, or who are interested therein, or who will be affected by the making of a declaration of rights. Section, 27-706 supra. Any claims for expenditures made pursuant to Chapter 11 are required by Arizona law to be submitted to the state auditor, and all warrants against the funds appropriated by Chapter 11 are required to be issued by such state auditor. Because of these facts the state auditor would be affected by the determination of rights sought by appellants respecting the validity of the expenditures authorized by Chapter 11.

■ We think that there is no merit in the proposition that there is no justiciable

controversy between plaintiffs and the Commission as now constituted. The proposition has its genesis in the following sequence of events: Commissioner Eden was succeeded by Commissioner Brooks. No attempt was made to substitute Brooks for Eden as required by Rule 25(d), section 21-533, A.C.A.1939.

"* * * Substitution pursuant to this rule may be made when it is shown by supplemental pleading that the successor of an officer adopts or continues or threatens to adopt or continue the action of his predecessor in enforcing a law averred to be in violation of the constitution of the state or of the United States. Before a substitution is made, the party or officer to be affected, unless expressly assenting thereto, shall be given reasonable notice of the application therefor and accorded an opportunity to object."

Hence it is argued that the action abated as to Brooks. Then it is said that this court should take judicial knowledge of the record in Millett v. Frohmiller, supra, as it is therein disclosed that Commissioner Wright, by signing a contract with Millett to assist in a rate survey to be paid by funds provided by Chapter 11, no longer considered that Chapter 11 was mandatory, and that it is apparent that Wright and Brooks no longer contemplate expending any of the $50,000 made available by Chapter 11 for a rate survey conducted or assisted in by the Federal Power Commission.

Why Brooks was not substituted as a party defendant has not been answered and if he were the sole occupant of the office the action would necessarily abate, but there are two other commissioners. Their motion to dismiss the complaint was granted and resulted in a judgment in favor of the Commission. It is this judgment that is complained of here. This judgment is subsisting and if not reversed the only inference that we could indulge in is that the Commission will obey the law and follow the mandates of Chapter 11. In the Millett case we held, among other things, that these funds were not available to the Commission to pay the claim of Millett or any person other than an employee of the Federal Power Commission. Whether such funds would be available even for a Federal Power Commission employee is the question now before us by this direct attack on the constitutionality of Chapter 11.

The Arizona Corporation Commission, unlike such bodies in most states, is not a creature of the legislature, but is a constitutional body which owes its existence to provisions in the organic law of this state. These provisions are found in Article 15 of the Arizona Constitution which provides for the creation of the Corporation Commission, and defines its powers and duties. The meaning and effect of these constitutional provisions were first dealt with comprehensively by this court in the case of State v. Tucson Gas &

Electric Light & Power Co., 1914, 15 Ariz. 294, 138 P. 781, 782. In that case the court considered the basic nature of the body created by the constitutional provisions, the scope of its powers and duties, and its right to deal with matters entrusted exclusively to it—free from interference by the legislative department of the state. In discussing the meaning and effect of various sections of Article 15 of the Constitution, this court said:

"Considering section 3, it will be noticed that the Corporation Commission is given full power to prescribe just and reasonable classifications and just and reasonable rates and charges to be made and collected by public service corporations. 'Full power,' taken alone as the measure of the Commission's jurisdiction, means a complete and perfect or plenary power over the subject-matters named, but it does not necessarily mean exclusive powers. The 'full power' granted the Commission extends to the fixing of classifications and rates of all public utilities operating in the state, whether in incorporated cities or not. In the absence of legislation as contemplated by the proviso in section 3, the 'full power' is a general grant or investiture of plenary power in the Commission to prescribe classifications and fix rates and charges for all public service corporations in the state. By the proviso this full power and jurisdiction of the Corporation Commission to prescribe classifications and fix rates and charges in incorporated cities and towns may be transferred to such municipal corporations, if 'authorized by law.' That is to say, the Legislature may, in one case, exercise its power to restrict or limit the 'full power' and jurisdiction of the Commission to prescribe classifications and fix rates and charges of public service corporations, and that case is particularly and definitely pointed out. The Constitution itself having thus named the one instance that the Commission may be shorn of its 'full power' to act on rates and charges and classifications, and reposed the authority in the Legislature to divest that power in the one instance, the inevitable conclusion is that the Legislature could interfere with, or limit the commission's powers in no other instance.

\* \* \* \* \* \*

"Where the Constitution has said that public service corporations shall be governed by the Corporation Commission in a given respect, it is the last, the highest, and controlling fundamental law as to that matter. No act of the Legislature, for it must proceed in accordance with the terms of the Constitution, can exercise the power, or place it elsewhere.

\* \* \* \* \* \*

"It was clearly the policy of the framers of the Constitution, and the people in adopting it, to take the powers of supervision, regulation, and control of public utilities from the legislative branch and vest them in the Corporation Com-

mission, whose powers and jurisdiction are sui generis, and whose functions in the aggregate necessarily in their very nature comprehend those which ordinarily are separately vested in the legislative, judicial, and executive departments of government, respectively. From this fixed, definite and certain policy, as found in the Constitution, of imposing such powers in the Commission, there arises an inhibition against their exercise by the Legislature as insuperable, as if expressly prohibited to it.

\* \* \* \* \* \*

"In order that the Corporation Commission might act intelligently, justly, and fairly between the public service corporations doing business in the state and the general public, section 14 was written into the Constitution, which section reads: 'The Corporation Commission shall, to aid it in the proper discharge of its duties, ascertain the fair value of the property within the state of every public service corporation doing business therein; and every public service corporation doing business within the state shall furnish to the Commission all evidence in its possession, and all assistance in its power, requested by the Commission in aid of the determination of the value of the property within the state of such public service corporation.' The 'fair value of the property' of public service corporations is the 'recognized basis upon which rates and charges for services rendered should be made, and it is

made the duty of the Commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges, and to that end the public service corporations are required to furnish the Commission all the assistance in their power."

■ Since the decision in the Tucson Gas & Electric Light & Power case this court has on numerous occasions considered the question of the extent of the exclusive powers conferred on the Corporation Commission by the Arizona Constitution. The most recent pronouncement of the court appears in Corporation Commission v. Greyhound Lines, 54 Ariz. 159, 94 P.2d 443, 450, in which all previous decisions touching on the question were reviewed. The court pointed out that the specific issue in the Tucson Gas & Electric Light & Power Co. case was the power of the Corporation Commission over classifications, rates, and charges of public service corporations. The court further pointed out that while there was language in the Tucson Gas & Electric Light & Power Co. decision which, if considered alone, might be interpreted as holding that the "full power" of the Commission to "make reasonable rules, regulations and orders, by which such corporations shall be governed in the transaction of business within the State" refers to all business of every nature carried on by public service corporations, the correct interpretation of the constitutional provisions is that the "full power to \* \* \*

make reasonable rules, regulations and orders, by which such corporations shall be governed in the transaction of business *within the state*" qualifies and refers only to the power of the Commission to "prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporation." However, the case gives full recognition to the principle that in the matter of prescribing classifications, rates, and charges of public service corporations and in making rules, regulations, and orders concerning such classifications, rates, and charges by which public service corporations are to be governed, the Corporation Commission has full and exclusive power. In such field the Commission is supreme and such exclusive field may not be invaded by the courts, the legislature, or the executive.

 Since ascertaining the fair value of property of public service corporations is a necessary step in prescribing just and reasonable classifications, rates, and charges, and section 14 of Article 15 of the Constitution provides that "The corporation commission shall, to aid it in the proper discharge of its duties, ascertain the fair value of the property within the state of every public service corporation doing business therein; * * *," it follows that the duty, power, and procedure to be followed to ascertain such fair value are likewise within the exclusive prerogatives of the

Corporation Commission, and may not be exercised by any other department or body. Let us now consider the specific language of Chapter 11 in the light of the exclusive powers and duties vested in the Corporation by the Constitution.

## "An Act

"Relating to public utilities; providing for the establishment of a rate-making base for public service corporations furnishing gas and electricity; providing for the corporation of the Federal Power Commission and making an appropriation.

"Be it Enacted by the Legislature of the State of Arizona:

"Section 1. *Investigation of property valuations.* (a) *As soon as practicable after this act takes effect, the corporation commission shall ascertain the fair value* of the property of public service corporations in the state furnishing gas or electricity, for profit, *for the purpose of establishing a base for rate-making purposes.*

"(b) In accordance with the terms of the federal power act providing for cooperation with state regulatory agencies, *the commission shall without delay initiate negotiations with the federal power commission* for such cooperation, and for the assignment of such rate and other experts and professional assistants as may be needed to assist the commission in making the investigation and conducting hearings authorized by this act. *The commission is*

*directed to take such action, enter into such agreements, issue such orders and adopt such rules, regulations and procedures, in conformity with the federal power act and the rules and regulations of the federal power commission thereunder, necessary to effect such cooperation,* and by agreement or order to define the scope of the investigation, the manner in which it shall be conducted, the staff to be employed, the expenditures to be allowed and the manner and time of payment for the expenses thereof.

"Sec. 2. *Rate base property inventories. For the purposes of the property valuation investigation authorized by this act* every public service corporation furnishing gas or electricity for profit shall, upon notification by the commission, file with the commission, in such form as it shall prescribe, an inventory of its property claimed as forming any part of its rate base, and a statement of the time of installation, construction or acquisition thereof, the original cost of the same, and the amount of depreciation theretofore claimed, and shall from time to time give such other information as the commission may require. *When the fair value of the property entering into the rate base is established it shall constitute the allowable values for rate-making purposes.* Thereafter such public service corporations shall file, at such intervals as the commission may prescribe, supplemental inventories of all additions, betterments, extensions, and new construction claimed as forming a part of their rate base, and the cost thereof. All inventories shall be open to public inspection.

"Sec. 3. *Establishment and enforcement of property valuation. Upon completion of the property valuation* investigation *authorized* by this act, *the commission shall embody* its final determination and judgment in appropriate decrees, orders or decisions duly entered in its record of proceedings, *which shall thereupon become binding and effective and shall be enforced as to all persons concerned.*

"Sec. 4. *Appropriation.* (a)· The sum of fifty thousand dollars is appropriated to the corporation commission, for the payment of the expenses of the federal power commission, including but not limited to the salaries of personnel and travel expenses, in cooperation with the corporation commission in making the property investigation authorized by this act.

"(b) This appropriation shall be exempt from the provisions of section 7, article 4, chapter 86, Session Laws of 1943, regular session, relating to lapsation of appropriations. Any balance remaining of such appropriation after payment of the expenses of the federal power commission in connection with the cooperation authorized by this act shall be placed in a continuing reserve fund, for use only by the corporation commission for cooperative action, in conformity with the provisions of the federal

power act, in any matter, hearing or procedure before the corporation commission or the federal power commission in which both of said commissions are interested." (Emphasis supplied.)

Section 1(a) of Chapter 11 provides that as soon as practicable the Commission shall ascertain the fair value of the property of public service corporations in the state furnishing gas and electricity for profit for the purpose of establishing a base for rate-making purposes. It has been suggested that this provision is meaningless inasmuch as it purports to place a duty on the Commission which has already been imposed on it by the Constitution. At first blush it might appear that such is the only effect of section 1(a), but it goes further. By such language the legislature assumes the right to set itself up as the judge of when the values of the property of public service corporations shall be ascertained by the Commission, and to dictate to the Commission what particular kinds of public service corporations require such valuation proceedings. It is not for the legislature to say whether the valuations of public service corporations ascertained by the Corporation Commission represent the fair value or that additional or different determinations as to their fair value should be made. Such matters are within the exclusive prerogatives of the Commission, subject only to judicial review. If there can be any doubt from a consideration of the provisions of section 1(a) that the legislature intended by enactment of Chapter 11 to assume the right to exercise powers in a field forbidden by the Constitution, such doubts are set at rest by the language contained in section 1(b), which directs the Commission to, without delay, initiate negotiations for assignment to it of rate experts and professional assistants, in accordance with terms of the Federal Power Act, 16 U.S.C.A. § 791a et seq., providing for cooperation with state regulatory agencies, to assist the Commission in making the investigation and conducting the hearings "authorized" by Chapter 11. No choice is permitted the Commission.

Appellees argue with much insistence that the contentions of appellants have been determined adversely against them by this court in Garvey v. Trew, 64 Ariz. 342, 170 P.2d 845. The constitutionality of Chapter 11 was not before the court in the Trew case, the only issues there being whether it was a support measure for a department of government and if so whether as such it was subject to the referendum; and if it was a true appropriation measure whether it was exempt from the referendum even though it did not carry an express emergency clause (not having been passed by a two-thirds vote of the legislature). The opinion recognizes that the Corporation Commission has full, exclusive, and plenary power in the field of rate-making. However, there is contradictory language in

the opinion to the effect that Chapter 11 operates as an appropriation measure only, and, inferentially at least, that the Act does not limit the constitutional powers and duties of the Commission. The opinion recognizes that under the Constitution the Corporation Commission is required to prescribe just and reasonable rates and charges to be made and collected by public service corporations and to ascertain the fair value of the property of all public service corporations doing business in the state; that the Commission is not limited as to the agencies it may employ for such purpose; that the Commission has the power of its own volition to provide for cooperation with the Federal Power Commission; and that while the legislature may enlarge the powers and extend the duties of the Commission, it may not decrease its powers. The conclusion is then reached that the foregoing establishes that Chapter 11 operates only as an appropriation measure. The connection between the premises laid down and the conclusion reached is not now apparent.

In the instant case it is not that we see anything unusual or illegal in a state agency's utilizing the facilities of the Federal Power Commission on a rate survey. (Such cooperation already exists in Arizona in numerous fields, e.g., highways, social security, unemployment, wild life, etc.) But the Commission must be free to seek assistance or cooperation as its judgment dictates. There can be no compulsion by the legislature, as there is in Chapter 11, to force upon the Commission a particular mode of accomplishing its constitutional duties.

For the reasons above set forth we conclude that Chapter 11, First Special Session, Laws of 1945, is unconstitutional and void. It follows that the judgment of the lower court must be reversed and it is so ordered, with directions to deny the motion to dismiss and enter a judgment for plaintiffs not inconsistent with principles herein enunciated.

STANFORD, C. J., and UDALL, J., concur.