558 P.2d 686

CITY OF TUCSON, a body politic, Lewis C. Murphy, the Mayor of the City of Tucson, Donald L. DeMent, City Clerk of the City of Tucson, Ruben Romero, Richard J. Kennedy, Robert C. Cauthorn, Emmett McLoughlin, Rudy A. Castro and Barbara L. Weymann, Members of the City Council of the City of Tucson, Appellants,

v.

Joe JACOBSON, Appellee.

No. 12582.

Supreme Court of Arizona, In Banc.

Nov. 29, 1976.

James D. Webb, City Atty. by Thomas J. Wilson, Asst. City Atty., Tucson, for appellants.

Johnson, Hayes & Dowdall, Ltd. by Richard J. Dowdall, Tucson, for appellee.

HOLOHAN, Justice.

The City of Tucson, its council, and mayor have appealed the judgment of the superior court setting aside certain resolutions of the council and ordering that appellee Joe Jacobson be allowed to assume the office of city magistrate of Tucson. We assume jurisdiction pursuant to 17A A.R.S. Rule 47(e)(5), Rules of the Supreme Court.

The facts are not in dispute. On April 26, 1975 City Magistrate William Brashears advised the city council that he was resigning as magistrate effective May 2, 1975. Mr. Brashears had originally been appointed magistrate on April 9, 1973 for the usual two-year term. The city council had taken no action to extend or renew the term of Mr. Brashears prior to receiving his letter of resignation.

After receiving the letter of resignation the city council, on April 28, 1975, appointed, by resolution, Joe Jacobson to the office of city magistrate for a term of two years commencing April 29, 1975. An attempt to append an emergency clause to the resolution failed. At a meeting of the council held on May 5, 1975, a second resolution was passed which repealed the resolution of April 28th and voided the appointment of Jacobson. At a subsequent regular session of the council held on May 19, 1975, it was moved that the May 5th resolution be reconsidered for the purpose of attaching to it an emergency clause. The motion passed unanimously and the reconsidered resolution of repeal was passed and adopted with the inclusion of an emergency clause.

Appellee filed a petition for special action in the superior court, secured the judgment above referred to, and this appeal followed.

The primary issue in this case is the determination of when Mr. Jacobson's appointment to the office of city magistrate became effective. Appellants argue that the original resolution of appointment did not become effective for thirty days because there was no emergency clause added to the resolution. Appellee maintains the resolution of appointment became effective on the date of its passage.

Prior to our determination of the primary issue we must consider appellants' threshold argument that a vacancy did not exist in the office of city magistrate. In support of their position, appellants cite provisions from the Tucson City Charter [1] and the Tucson City Code [2] which provide for the establishment of one chief city magistrate and such assistants allowed by the mayor and council. It is therefore argued that as long as *one* position of chief city magistrate is filled there is no vacancy to be filled by

1. Chapter XII, Section 3 of the Tucson City Charter (1929), provides as follows: "There shall be at least *one* city magistrate appointed by the mayor and council, who shall be judge of the city court. He shall hold office for a term of two years, or until his successor is appointed and qualified, unless sooner removed from office in the manner provided in this Charter." (Emphasis supplied.)

2. Chapter VIII, Section 8–2 of the Tucson City Code (1964) provides: "There shall be appointed *a* chief city magistrate and such other additional magistrates as determined by the mayor and council. The chief city magistrate shall be responsible for the administration of the city court. Each magistrate shall exercise all of the powers and duties of the city magistrate as provided by the Charter and Code of the city and the Constitution and laws of the State of Arizona in such case made and provided." (Emphasis supplied.)

the mayor and council. Appellees counter this argument with the contention that a vacancy in the city magistrate's office existed after the expiration of Mr. Brashears' two-year term on April 8, 1975. We do not agree with either of these arguments.

■ Under the Tucson City Charter the existence or nonexistence of an office vacancy is determined by Chapter VIII, Section 5 (1929), which provides:

"A vacancy shall exist in any elective or appointive office, except under the recall provisions of this charter, when an officer fails to qualify within thirty days after commencement of his term, dies, resigns, removes from the city, absents himself continuously for thirty days from the duties of his office without the consent of the council, for two consecutive months, is incapacitated so that he is unable to attend to the duties of his office, is convicted of violating any of the provisions of this Charter, or of a felony, or is judicially declared a lunatic as defined by statute, or, in the office of councilman, when a member of the council is selected to fill a vacancy in the office of mayor, as hereinbefore provided."

In the case before us Mr. Brashears continued to hold over in his office of city magistrate following his expired term of office. As previously set forth in Chapter 8, § 8–2 of the Tucson City Code (1964), the term of office for a city magistrate is "two years, *or until his successor is appointed and qualified*, unless sooner removed from office." (Emphasis supplied.) In its interpretation of very similar language in Article XXII, § 13 of the Arizona Constitution,[3] this court has held that where an incumbent officer holds over following the expiration of his term the office he holds is not vacant. *McCall v. Cull*, 51 Ariz. 237, 75 P.2d 696 (1938); *Sweeney v. State*, 23 Ariz. 435, 204 P. 1025 (1922). As was stated in *Sweeney v. State, supra:*

3.  Article XXII, § 13 of the Arizona Constitution provides:
    "The term of office of every officer to be elected or appointed under this Constitution

"  .  .  . [T]he additional term, though in its nature contingent and defeasible, is, while it exists, as much a part of the term of the incumbent as is his original, fixed, or regular term. Such incumbent is entitled to hold over after the expiration of his regular term, until the happening of both the events mentioned; i. e., the election of his successor and the qualification of such successor. During the period of the tenure as so extended the office will not become vacant, unless for causes which would create a vacancy in the fixed and regular term, such as the death, resignation, removal, disqualification, or the like, of the incumbent." 23 Ariz. at 441.

At the time of passage of the original resolution of appointment on April 28, 1975, the office occupied by Mr. Brashears was not vacant. Although technically a vacancy did not exist in the office of city magistrate on April 28, 1975, the mayor and council could replace Mr. Brashears by appointing a new magistrate who would take office when qualified. As we shall point out, the new appointee could not qualify for the office until the mayor and council's appointment became effective.

■ Fundamental to the controversy before us is the point in time when the appointment of Mr. Jacobson became irrevocable and not subject to reconsideration or repeal. As Chief Justice Marshall enunciated in *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803), the general rule is that an appointment is complete only after the performance of the last act required of the appointing power. *See* 3 E. McQuillin, "The Law of Municipal Corporations" § 12.-86 (3rd Ed. 1968).

Pursuant to the Tucson City Charter, Chapter IX, Sec. 4 (1929):

"The mayor and council shall establish rules for their proceedings, and shall act *only by resolutions or ordinance.*" (Emphasis supplied.)

or the laws of Arizona shall extend until his successor shall be elected and shall qualify."

In compliance with this directive and the appointive authority given to the mayor and council by the Tucson City Charter Chapter V, Sec. 4 (1929), Mr. Jacobson's appointment to the office of city magistrate was implemented in the form of a resolution. The Tucson City Charter does not authorize the mayor and council to make appointments to city offices by any other method. We view this resolution of appointment as the only correct manner which the mayor and council could use to implement their action.

All actions taken by the Tucson mayor and council do not become effective until thirty days after their passage unless accompanied by an emergency clause. Tucson City Charter Chapter IX, Sec. 8 (1929). However, appellee argues that this thirty-day delay and emergency clause requirement are not applicable to the appointment of a city magistrate because Chapter V, Sec. 4.1 of the Tucson City Charter (1929) provides that such officer "shall hold office for a period of two years from the date of each appointment." We do not believe the two provisions are either conflicting or inconsistent. We interpret the commencement date of the city magistrate's term as set forth in Chapter V, Sec. 4.1, *supra*, to be the *effective* date of an appointment and not necessarily the date upon which the appointive authority acted to make the appointment. Where a resolution of appointment contains an emergency clause the effective date will coincide with the date of passage if the resolution so designates. Otherwise, an appointment is treated as all other resolutions and does not become effective for at least thirty days following its passage. Mr. Jacobson's appointment did not contain an emergency clause and therefore was not to be effective until thirty days after the mayor and council acted.

Having ruled that Mr. Jacobson's appointment was not to become effective for thirty days, we must now determine what effect subsequent actions by the Tucson mayor and council had on that appointment. We note that the mayor and council had, prior to the appointment now in question, adopted rules and regulations governing their proceedings pursuant to the Tucson City Charter, Chapter IX, Sec. 4, *supra*. Rule I of the Mayor and Council, Rules and Regulations (1968), provides that when a motion has been made and carried or lost, it shall be in order for any member who voted with the prevailing side to move for reconsideration thereof on the same or succeeding meeting day. On May 5, 1975, the succeeding meeting day following Mr. Jacobson's appointment, the mayor and council took two separate actions by which they sought to void their resolution of appointment. First, the mayor and council voted, by separate resolution, to repeal Mr. Jacobson's appointment. Second, the mayor and council, in full compliance with their own Rule I, moved to reconsider their previous resolution of appointment and at that time voted down the original resolution of appointment.

Since we have held that Mr. Jacobson's resolution of appointment was not effective for thirty days, the Tucson mayor and council had full authority to reconsider the appointment as they would any type of resolution. The appointment was reconsidered and denied by the mayor and council on May 5, 1975. As we have pointed out, the same resolution of appointment was also repealed on May 5, 1975. The repealing resolution was reconsidered on May 19, 1975, when an emergency clause was added giving effect to the repeal on that date. We recognize the cautious thoroughness exhibited by this dual action but we do not believe that it was necessary in this case. The reconsideration of the resolution of appointment on May 5, 1975, was sufficient to make that appointment immediately ineffective. The resolution of repeal and subsequent addition of an emergency clause were mere surplusage.

Appellee has argued that the emergency clause of May 19, 1975, is without effect because it is lacking in specificity and is not in compliance with the Charter requirement that reasons for the emergency be stated separately. In *City of Phoenix v. Landrum & Mills Realty Co.*, 71 Ariz. 382,

227 P.2d 1011 (1951), we ruled that the exercise of discretion by a city's legislative body in a determination of the existence of an emergency is outside our scope of review. We also note that since the repealer and emergency clause were surplusage we need not consider this argument. We therefore will not review the emergency clause determination made by the Tucson mayor and council.

■ Finally, appellee argues that the resolution of appointment of Mr. Jacobson has the force and effect of a contract and cannot be reconsidered.[4] Since we have ruled that the resolution of appointment was not effective for thirty days, there was no contract executed at the time Mr. Jacobson's appointment was reconsidered. The mayor and council were not prohibited from making that reconsideration.

Based upon the foregoing analysis we conclude that the reconsideration action taken by the Tucson mayor and council on May 5, 1975, made Mr. Jacobson's appointment ineffective as of that date.

Reversed.

CAMERON, C. J., and HAYS and GORDON, JJ., concur.

STRUCKMEYER, Vice Chief Justice, dissenting:

I am unable to agree with the majority in their resolution of this case. The facts are uncomplicated; the legal consequences elementary.

Appellee, Joe Jacobson, was appointed as City Magistrate for the City of Tucson by Resolution No. 9496 of the City Council on April 28, 1975. The resolution provided:

"BE IT RESOLVED * * * [t]hat Joe Jacobson be and he hereby is, appointed a City Magistrate of the City of Tucson, Arizona, for the term commencing April 29, 1975 to and including April 28, 1977 * * *."

That the resolution was a present appointment, a complete and final enactment as of the time of its passage, April 28, 1975, cannot be doubted. While the operative date of the resolution was postponed for 30 days because it was not enacted as an emergency measure, the legal effect so far as Jacobson was concerned is that the commencement of his duties and responsibilities was postponed for 30 days until May 28, 1975.

One week later, on May 5, 1975, the City Council by a 4 to 3 vote purported to rescind Resolution 9496 by the adoption of its Resolution 9502. At the same meeting, following the passage of Resolution 9502, the Council by the same vote adopted Resolution 9503 appointing a person other than Jacobson as City Magistrate. Thereafter, on May 19, a motion was made to reconsider Resolution 9502. This motion passed and Resolution 9502 was then re-adopted by a vote of 6 to 1 with an emergency clause.

The principle controlling here was early stated by Chief Justice Marshall in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803):

"Some point of time must be taken when the power of the executive over an officer, not removeable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act, required from the person possessing the power, has been performed." 5 U.S. at 157.

From *Marbury v. Madison*, extending through a long line of cases, the rule has been fixed that if a complete vote has been taken which results in the giving of the necessary majority or plurality to one of the candidates, a public body cannot rescind its vote or reconsider its action and select another person except in the manner lawfully permitted for removal.

In *Ekonomon v. Town of Milford*, 21 Conn.Sup. 123, 145 A.2d 381 (1958), for example, eleven members of the town council

4. Subsection 4 of Rule I, Mayor and Council Rules and Regulations (1968) provides:

"No matter approving a contract may be reconsidered after execution of the contract, unless the party to the contract has not yet acted thereon to his detriment."

voted the nomination and election of certain persons to membership on its urban redevelopment agency. The council had proceeded to other business when four councilmen who had not been present during the voting arrived at the meeting and asked to be allowed to vote on the membership of the agency. All fifteen members of the council voted to suspend the rules to permit the four members to vote and to add their votes to the previously announced totals, with the result that one person of those originally elected to membership was replaced by another person. The Connecticut court held:

"This court is of the opinion that the election or appointment in this case was made when the result of the first ballot was ascertained and declared. Nothing more was required of the council to complete it. Its will had been expressed in a parliamentary and legal manner, had been duly declared, and had become a matter of record. Nothing further was required by law. Mr. Chase's right to the office vested at once, and he might without further ceremony accept and qualify. *Hall v. Inhabitants of Holden*, 116 Mass. 172, 176; *Montefiore Cemetery Co. v. Board of Com'rs of City of Newark*, 130 A. 730, 3 N.J.Misc. 1100, 1101; *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60.

\* \* \* \* \* \*

\* \* \* An appointment is complete when the last act required of the appointing power has been performed. This appointment is evidenced by an open, unequivocal act which, being the last act required from the person or body making it, necessarily excludes the idea of its being, so far as respects the appointment, an inchoate and incomplete transaction. Some point of time must be taken when the power of the appointive power over an officer, not removable at will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act required from the person or body possessing the

power has been performed. *Marbury v. Madison*, supra." 145 A.2d at 383–384.

An appointment is complete when the resolution providing for the appointment is finally passed. 3 McQuillin, Municipal Corporations 392. That Jacobson could not enter into the performance of the duties of the office until May 28th because the operative date was postponed for the want of an emergency clause is of no moment. The appointment was final on April 28th and there was no power in the City Council to rescind the appointment. *See Mansfield v. O'Brien*, 271 Mass. 515, 171 N.E. 487 (1930); *Morris v. Cashmore*, 253 App.Div. 657, 3 N.Y.S.2d 624 (1938); *State v. Miller*, 62 Ohio St. 436, 57 N.E. 227, 78 Am.St.Rep. 732 (1900); *State v. Tyrrell*, 158 Wis. 425, 149 N.W. 280 (1914). And *see also* "Reconsideration of appointment or confirmation of appointment to office", 89 A.L.R. 132 and authorities cited from 24 states that the appointment is final when the last act of the appointing body has been performed.

Appellants argue that a Tucson city magistrate may be removed from office without cause, and this is true. By Chapter 5, § 4.1 of the Tucson City Charter, the city post auditor, city attorney, city clerk and city magistrate hold their offices for two years unless removed by a vote of two-thirds of the Council "voting affirmatively therefor." From this, appellants further argue that Resolution 9502 as passed and adopted on May 19, 1975 with the emergency clause making it effective immediately was an exercise of the authority provided in the City Charter to remove a magistrate.

Such argument is obviously specious. Resolution 9502 was to rescind Resolution 9496. There is not the slightest suggestion in Resolution 9502 that it purported to remove an existing city magistrate. It does not follow that the members of the City Council who voted to rescind the resolution of appointment, No. 9496, would for the same reason vote to remove or dismiss Jacobson as a city magistrate. In any event, they did not.

For the foregoing reasons, the judgment of the Superior Court of Pima County should be affirmed.