600 P.2d 44

Robert D. SMITH and Associated General Contractors of America—Arizona Building Chapter, an Arizona Corporation, Plaintiffs/Appellants,

v.

GRAHAM COUNTY COMMUNITY COLLEGE DISTRICT, and Robert L. Carrasco, Rex O. Barney, Richard W. Mattice, Ted Lee, and Donald Welker, Individually and as members of the said College District, Defendants/Appellees.

No. 2 CA–CIV 3212.

Court of Appeals of Arizona, Division 2.

June 15, 1979.

Rehearing Denied July 18, 1979.

Review Denied Sept. 11, 1979.

**432**

Kaplan, Kaplan, Jacobowitz & Hendricks, P. A. by Henry Jacobowitz and Jarril F. Kaplan, Phoenix, for plaintiffs/appellants.

Ronald J. Greenhalgh, Graham County Atty. by C. Robert Pursley, Sp. Deputy County Atty., Safford, for defendants/appellees.

Lewis & Roca by John P. Frank, Marty Harper and Patricia K. Norris, Phoenix, for amici curiae Plumbing & Air Conditioning Contractors of Arizona, Nat. Elec. Contractors Ass'n, Arizona Chapter, and the Arizona Masonry Contractors Ass'n.

## OPINION

HOWARD, Judge.

Appellants filed an action in superior court to enjoin appellees from making alterations on the roof of a building at the Thatcher Campus of Eastern Arizona College without having the work done by a licensed contractor. Appellants also asked for declaratory relief. The trial court, after a hearing, denied appellants' request for a preliminary injunction. We have jurisdiction to hear this matter under A.R.S. Sec. 12–2101(F)(2). See also, *Bulova Watch Company v. Super City Department Stores of Arizona, Inc.,* 4 Ariz.App. 553, 422 P.2d 184 (1967).

The individual appellant, Robert D. Smith, is a local resident and taxpayer of the Graham County Community College District. The other appellant is an Arizona nonprofit association composed of general contractors licensed to engage in the contracting business in Arizona.

During the early part of 1978 the college district retained an architect to prepare plans and specifications for a major alteration to one of its buildings at its Thatcher campus. The architect estimated that the cost of the project, erecting a new roof system would be approximately $50,000.

After the plans and specifications were prepared, the college district advertised for bids on the project. Only one bid, for $126,-500, was received. The college district rejected it because it was too high and decided to do the work itself. It hired two employees who, together with three existing personnel, commenced work on the roof. At the time of the hearing, the work had been in process for about eight days. The sum of $38,500 had already been expended on materials and it was estimated that the labor cost for the job would be approximately $12,000. This labor cost related solely to the two employees hired to do the job and did not cover any wages paid to permanent personnel working on it. Appellants contended the appellees were unlawfully expending funds by their failure to comply with A.R.S. Sec. 34–201.

The first issue in this case is appellants' standing to bring an action. A taxpayer has sufficient standing in an appropriate action to question illegal expenditures made or threatened by a public agency. *Secrist v. Diedrich,* 6 Ariz.App. 102, 430 P.2d 448 (1967). The right to maintain such a suit is based upon the taxpayer's equitable ownership of such funds and his liability to replenish the public treasury for the defi-

ciencies caused by the misappropriation. *Ethington v. Wright,* 66 Ariz. 382, 189 P.2d 209 (1948); *Berghorn v. Reorganized School Dist. No. 8,* 364 Mo. 121, 260 S.W.2d 573 (1953); 74 Am.Jur.2d Taxpayers' Actions Sec. 16 (1974); 43A C.J.S. Injunctions Sec. 132 at 247 (1978). In *Secrist v. Diedrich,* supra, which involved an expenditure in violation of A.R.S. Sec. 34–201, we held that a taxpayer has standing to attack expenditures made in violation of the statutes. In a later case, *Varga v. Valdez,* 121 Ariz. 233, 589 P.2d 476 (App.1978), dealing with an alleged failure to follow A.R.S. Sec. 34–201, we held that the taxpayer could not sue because he made no showing of pecuniary damage. We based this holding on *Henderson v. McCormick,* 70 Ariz. 19, 215 P.2d 608 (1950). Our reliance was misplaced. *Henderson v. McCormick,* supra, also states:

> "The rule of law announced in the cases cited by appellees that a taxpayer's action will lie to test the legality of the action of a municipal governing body, irrespective of pecuniary loss, grew out of the interpretations of statutes which confer express authority so to do, which authorization we do not find in our statutes. Many of the other cases cited by counsel for appellees have to do with public money being paid out under *illegal contracts which fall under the generally accepted rule that a taxpayer may enjoin the unlawful payment of public money.* Nothing of this sort is involved here." (Emphasis added) 70 Ariz. at 24, 215 P.2d at 611.

While there may have been other grounds in *Varga v. Valdez,* supra, which justified our affirmance of the trial court, the reason we enunciated for affirmance was erroneous. We specifically overrule *Varga v. Valdez,* supra.

■ Appellant Robert D. Smith is a taxpayer in the community college district

and thus clearly has standing to bring suit. However, Associated General Contractors of America is not a taxpayer in the community college district. For a taxpayer to maintain an action to restrain an allegedly illegal expenditure of public funds, he must be a contributor to the particular fund to be expended. *Naugle v. Vaux,* 68 Pa.D. & C. 135, 60 Dauph Co. 129 (1949); and see *Manufacturers Ass'n of Connecticut v. Administrator, Unemployment Compensation Act,* 20 Conn.Supp. 108, 125 A.2d 317 (1956). Associated General Contractors of America seeks to justify its standing only on the basis that it is a taxpayer and has presented no other theories. It contends that since it pays taxes to the State of Arizona, and the State of Arizona in turn contributes funds to the community college district, it has standing. We do not agree. Because the theory allowing the taxpayer to maintain a suit is based upon his equitable ownership of the fund and his liability to replenish the public treasury for an insufficiency caused by misappropriation, we believe that the connection of the Associated General Contractors of America with the community college district is too remote.

■ Since the alteration here exceeded $5,000, there is no question that A.R.S. Sec. 34–201 applied and appellees were required to put the work out to bid.[1] Appellees' contention that they fall within the exception stated in A.R.S. Sec. 34–201(B) is without merit since the cited exception applies only to public mental and penal institutions.[2]

■ The college district had the right to reject the bid that it received. A.R.S. Sec. 34–201(A)(4). However, there is no provision in A.R.S. Sec. 34–201 that allows a college district to use its own work force upon rejection of the bid or do anything

---

**1.** The administrative rules and regulations promulgated by the state board of directors for community colleges of Arizona requires the community college to comply with Title 34 of the Arizona statutes. A.C.R.R. R7–1–82A (1978).

**2.** A.R.S. Sec. 34–201(B) states:

> "If the agent believes that any construction, building, addition or alteration contemplated at a public institution can be advantageously done by the inmates thereof and regularly employed help, the agent may cause the work to be done without advertising for bids."

other than readvertise if it desires the work to be done.

Appellees claim that upon rejection of the bid they had the right to use their own work force because they are saving the taxpayers money and because an emergency situation existed. We do not agree. First of all, it was highly speculative at the time of the hearing whether in fact any money was being saved. The figures presented to the trial court did not include the wages of the three regularly employed staff members who were aiding in the construction of the roof and the work had just commenced. In any event, A.R.S. Sec. 34–201 is clear and unambiguous. It contains no provision allowing an agent to dispense with bids if it believes the work can be done more cheaply by its own work force. To read such an exception into the statute would defeat its express provisions since the requirements could then be circumvented by rejecting all bids.

■ The college building had a leaky roof for a very long time. It was precisely to solve the problem permanently, rather than on a constant emergency repair basis, that the college district decided to rebuild the entire roof structure of the building. In early 1978 an architect was hired to prepare plans and specifications for the roof. Bids were called for by advertising in Graham County and opened on July 14, 1978. The one and only bid was rejected. The college district decided to do the work itself. It advertised for, and hired, two new employees to perform the labor. It did not commence work on the roof until almost six months after the bid was opened and rejected. While it is undoubtedly true that the leaks grew worse after an unusually rainy season in 1978, we hardly believe that an emergency situation existed. Assuming arguendo there was an emergency, absent a statutory exception for emergencies, the competitive bidding requirements of a statute must be followed. *Northern Improvement Company v. State,* 213 N.W.2d 885 (N.D.1973).

The judgment as to appellant Robert D. Smith is reversed and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed as to Associated General Contractors of America.

RICHMOND, C. J., and HATHAWAY, J., concur.