624 P.2d 877

Roland L. DAIL, Plaintiff-Appellant,

v.

CITY OF PHOENIX, a municipal corporation; Margaret Hance, Joy W. Carter, William C. Donahue, Calvin Goode, Rosendo Gutierrez, Ken O'Dell, Amy T. Worthen, Marvin Andrews, Art Vondrick and Presley of Arizona, an Arizona corporation, Defendants-Appellees.

No. 1 CA–CIV 4731.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 16, 1980.

Rehearing Denied Jan. 28, 1981.

Review Denied March 3, 1981.

Hughes & Hughes, P. C., by John C. Hughes, Phoenix, for plaintiff-appellant.

Stephens & Toles, P. C., by Bill Stephens, Carol S. Benyi, and Martha B. Kaplan, Phoenix, for defendants-appellees City of Phoenix, Mayor and Council Members.

Stark & Wood by J. Robert Stark, Phoenix, for defendant-appellee Presley of Arizona.

## OPINION

HAIRE, Presiding Judge.

Appellant, Roland Dail, initiated an action in superior court requesting that a contract between appellees City of Phoenix (hereinafter, City) and Presley of Arizona (hereinafter, Presley) be declared "illegal, void and without authority of law." He further prayed that the Mayor and Council members, Manager, and Director of Water and Sewers of the City of Phoenix be enjoined from operating the water system that was the subject of the contract. The trial court granted appellees' motion for summary judgment on the grounds that appellant did not possess the requisite standing to proceed under the complaint.

The issue presented on appeal is whether appellant, in his capacity as a taxpayer or resident of the City of Phoenix, had standing to seek a declaration regarding the validity of a contract to purchase a water system to which the City and Presley were parties and an injunction prohibiting operation of the water system.

The City and Presley, a real estate development company, entered into the challenged contract in 1972. Pursuant to this agreement, Presley was to construct a water and sewer system to serve Ahwatukee. Ahwatukee is a community located outside the Phoenix city limits that was developed by Presley. The City was to take title to the system and operate it, paying Presley for Presley's development costs. Payment for this system could in no event exceed 35% of the revenue derived from water sales received from the customers served by the system. These payments were to be made until the cost had been paid to Presley. After the City took title to the system it was to be responsible for the system's operation.

The water system has consistently generated sufficient revenue to pay Presley the first 35% and still cover fully all costs, including wages, of operating the system. In fact, each year the City has derived a profit from this operation, with every successive year's gain being larger than the last. These facts were presented through affidavits of appellees' witness, the City of Phoenix Director of Water and Sewers. Since appellant has filed no controverting affidavits, the statements of the director are accepted as being true; the appellant cannot, in the face of appellees' affidavit, rely on the allegations of his complaint.

In his complaint, appellant attacked this contract on several substantive grounds. First, he asserted that Presley had acquired part of the water system that was ultimately sold to the City of Phoenix without first obtaining permission of the Corporation Commission. He argued that this violated A.R.S. § 40–285 and made the contract between Presley and the City void under A.R.S. § 40–285 A. Second, he attacked the City's contract with Presley on the ground that, prior to entering into the contract, the City had not submitted the proposal to a vote of the taxpaying electors of the City of Phoenix, thereby allegedly violating A.R.S. § 9–514. Third, appellant argued that Chapter XX, § 18 of the Charter of the City of Phoenix, which empowers the City to acquire utilities, requires that the City Manager file an informational report on the proposed acquisition of utilities with the City Clerk, record it in the Public Utility Record and publish it. According to appellant, this report was not made and therefore, he argued, the contract was void. Similarly, appellant's final challenge to the contract was based upon procedural noncompliance with a provision of the City of Phoenix Code. Because we determine this case on the basis of standing, we do not reach the merits of these challenges.

▮ Turning to the issue on appeal, we consider the appellant's standing, as a taxpayer of the City of Phoenix, to attack this contract between the City and Presley. The action was brought under A.R.S. § 12–1832 which provides:

"*Any person interested under a* deed, will, *written contract* or other writings constituting a contract, *or whose rights, status or other legal relations are affected by a* statute, municipal ordinance, *contract* or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." (Emphasis added).

Appellant first contends that this section of the Uniform Declaratory Judgment Act confers standing on him as a taxpayer because the statute confers standing to "any person". However, this broad interpretation is not supported by the language of the statute or the decisions applying it. By its terms the statute permits a person to seek a determination of the construction or validity of a contract only if he is "interested under" the contract or his "rights, status or legal relations are affected by" the contract. We do not accept appellant's argument that this statute confers a substantive right to challenge a municipal contract upon "any person" without a showing of his interest under the contract or an effect on his rights, status or legal relations. Appellant has not cited, nor has our search of the authorities disclosed, any decisional support for his broad interpretation of this statute. In interpreting the definition of "person" as used in another section of the Uniform Declaratory Judgment Act, A.R.S. § 12–1843, we refused to construe that section to create standing where standing did not otherwise exist. *Town of Wickenburg v. State,* 115 Ariz. 465, 565 P.2d 1326 (App.1977). The Oregon Supreme Court, in its interpretation of the section of the Uniform Declaratory Judgment Act now before this court, limited the right of a taxpayer to sue a municipal corporation to those taxpayers who could demonstrate an effect on the taxpayer, such as fiscal consequences. *Gruber v. Lincoln Hospital District,* 285 Or. 3, 588 P.2d 1281 (1979). We conclude that a taxpayer seeking a declaration that a municipal contract is invalid and an injunction to restrain official action does not have automatic standing.

▮ To determine a taxpayer's standing, a court must consider what interest a taxpayer is protecting. In *Ethington v. Wright,* 66 Ariz. 382, 189 P.2d 209 (1948), the Supreme Court held that the taxpayers of a municipality had standing to maintain a suit to enjoin the illegal expenditure of municipal funds. The court wrote:

"The right to maintain such suits is based upon the taxpayers' equitable ownership of such funds and their liability to replenish the public treasury for the deficiency

which would be caused by the misappropriation."

66 Ariz. at 386, 189 P.2d at 212.

When there is no expenditure of funds raised by taxation, the rationale for permitting standing does not exist, and the Arizona courts have denied standing. In *Henderson v. McCormick*, 70 Ariz. 19, 215 P.2d 608 (1956), the court held that the taxpayers of a municipality had no standing to attack the sale of a truck on the basis of a council member's interest in the transaction, where the transaction resulted from accepting the highest bid. In so holding the court said that a taxpayer must "show some pecuniary loss to taxpayers as a class" in order to challenge a transaction which did not involve the direct expenditure of municipal funds. We conclude that, absent fraud or other compelling circumstances, to have standing a taxpayer must be able to demonstrate a direct expenditure of funds that were generated through taxation, an increased levy of tax, or a pecuniary loss attributable to the challenged transaction of a municipality. *See generally* 74 Am. Jur. *Taxpayers' Actions* § 4 (1974).

■ Appellant has shown neither a direct expenditure of funds generated by taxation nor an increased levy of tax. Although money has been expended in the purchase and operation of this water system, the expenditures have always been made from revenue generated by the operation of the water system, not from funds raised by taxation of Phoenix taxpayers. Expenditures made under a contract from funds other than those raised by taxation do not confer upon taxpayers the right to challenge the contract. *Franks v. Welch*, 389 S.W.2d 142 (Tex.Ct.App.1965). *See also, Alexander v. City of Greenville*, 585 S.W.2d 333 (Tex.Ct.App.1979). Furthermore, the City has not incurred a pecuniary loss as a result of the purchase or operation of the water system. The uncontroverted affidavit of the Director of Water and Sewer Systems establishes that the net profit from the operation of the system increases annually.

■ Appellant next argues that he need not demonstrate a pecuniary loss if he is attacking an "illegal" agreement. To require the trial court to consider the merits of his challenge, the taxpayer must first show some interest beyond a general desire to enforce the law. In *Henderson v. McCormick, supra,* the Arizona Supreme Court quoted the following language from *Western New York Water Co. v. City of Buffalo,* 242 N.Y. 202, 151 N.E. 207, 208:

" 'Mere illegality is not enough. The very nature and purpose of a taxpayer's action, like the present one, presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests, and that, if permitted to continue, it will in some manner result in increased burdens upon, and dangers and disadvantages to, the municipality and to the interests represented by it and so to those who are taxpayers. It was not the intention of the statute that a taxpayer shall be allowed to intervene and bring to the decision of the courts every act of a municipal officer which may be claimed to be illegal. * * *' ' "To be entitled to this relief, when waste or injury is not involved, it must appear that, in addition to being an illegal official act, the threatened act is such as to imperil the public interest or calculated to work public injury or produce some public mischief." ' "

70 Ariz. at 24, 215 P.2d at 611.

Appellant contends that some courts have permitted taxpayer standing without a showing of the direct expenditure of taxpayer funds or a transaction resulting in a pecuniary loss. However, the cases relied upon by appellant involve performance of public work projects by a municipality where the municipality did not solicit outside bids, in violation of statutes requiring competitive bidding. *Secrist v. Diedrich*, 6 Ariz.App. 102, 430 P.2d 448 (1967); *Santa Rosa Lighting Co. v. Woodward*, 119 Cal. 30, 50 P. 1025 (1897). *See also, Smith v. Graham County Community College District*, 123 Ariz. 431, 600 P.2d 44 (1979). In

our opinion these cases are distinguishable. Competitive bidding statutes are specifically designed to protect the pecuniary interest of the municipality by assuring that public works are performed at the lowest cost. If bids are not taken it is difficult to demonstrate whether there may have been a lower bidder. The underlying rationale for permitting standing in these cases may be that taxpayer funds were expended on the contract or, alternatively, that the statute allegedly violated is specifically designed to protect the public treasury. We do not decide this issue. Appellant has alleged that the City did not comply with several procedures when it entered into the contract. Those procedures do not deal directly with the method for determining price or otherwise protecting the public treasury. We find no analogy between the case before us and those argued by appellant.

■ We hold that a taxpayer challenging a municipality's contracts must show an expenditure of funds generated through taxation, on the grounds asserted by appellant, or a transaction resulting in a pecuniary loss. This showing has not been made.

■ Finally appellant argues that, in his status as a resident and taxpayer of the City of Phoenix, he has standing to contest the contract because of an alleged water shortage in the City of Phoenix. Presumably he bases this argument on the possibility that at some future date his water rates may increase or the supply of water to his residence may be reduced because of an increased demand for water somehow created by the Ahwatukee water system. Assuming that the City of Phoenix is suffering a water shortage, there has been no showing that this shortage is presently or will imminently be affected by the City's contract to purchase and operate the Ahwatukee water system. Appellant contends that if he were to succeed in having the

purchase of the supply well declared void, the City "would have to provide, and is providing, an alternative source of supply for the Ahwatukee system users" and the City's main supply would then be affected. To base his standing on events that might be precipitated by the court's determination of the merits in his favor is unacceptable. First, the eventuality that he projects will not occur absent a finding that he has standing. Second, there is no provision in the contract here challenged requiring the City to provide its water to the Ahwatukee water system. In fact, appellees' uncontroverted affidavit shows that the system is entirely outside the City limits and is not interconnected with the City of Phoenix water supply. A declaratory judgment must be based on a real, not theoretical, controversy; a plaintiff must have sufficient, concrete interests at stake that a court may answer the questions presented in relation to those interests. *Town of Wickenburg v. State, supra.* Therefore, we do not decide whether a resident city water user might have standing to challenge a contract diverting water to an outside system.[1] Such a contract for diversion is not before us.

■ In view of our holding that appellant lacks standing to contest the validity of the contract, we have not discussed the implications of our disposition of a related case. *Sende Vista Water Company, Inc. v. City of Phoenix,* 617 P.2d 1158, 1980. In that litigation Sende Vista Water Company, Inc. (hereinafter Sende Vista) attacked the validity of the same contract challenged by appellant and this court rendered its opinion on the merits of that challenge. Appellant's arguments in the present litigation are substantially identical to those raised by Sende Vista. Additionally, appellant is represented by the same attorney as was Sende Vista. Because of the implications of this situation on judicial economy, if we had not decided this case on the basis of standing,

---

1. This discussion is directed only to the issue of standing. If such a resident had standing to challenge a municipal contract, he would then be required to show a legal basis for the challenge, such as a constitutional or statutory violation. A government contract cannot be attacked merely as being politically unwise, even if the one making the challenge has shown an effect on him sufficient to give him standing.

two further issues would have required our attention. First, we would have considered whether appellant should be bound by the determination of issues presented in the Sende Vista litigation as though he were a party; this, based on a factual determination of whether he had controlled or substantially participated in the litigation. Restatement (Second) of Judgments § 83 (Tent. Draft No. 2, 1975). Second, if we had addressed appellant's legal challenges to the agreement, the Sende Vista decision itself, by operation of *stare decisis*, would have been determinative of some, if not all, of the legal issues raised about various statutes, charter and code provisions. However, we do not decide these issues.

The judgment of the trial court is affirmed.

JACOBSON and EUBANK, JJ., concur.