641 P.2d 1298

TUCSON COMMUNITY DEVELOPMENT AND DESIGN CENTER, INC., an Arizona non-profit corporation, Plaintiff/Cross Appellant,

and

Charles W. White; Johnny W. Bowens; and David A. Yetman, Plaintiffs/Appellees,

v.

The CITY OF TUCSON, a municipal corporation, and its Mayor and Council, Defendants/Appellants/Cross Appellees.

No. 2 CA–CIV 4026.

Court of Appeals of Arizona, Division 2.

Dec. 28, 1981.

Rehearing Denied Feb. 3, 1982.

Review Denied March 2, 1982.

William J. Risner, Tucson, · for plaintiffs/cross appellant/appellees.

Frederick S. Dean, City Atty. by Thomas J. Wilson and Frank S. Bangs, Jr., Asst. City Attys., Tucson, for defendants/appellants/cross appellees.

## OPINION

BIRDSALL, Judge.

The appellees, Charles W. White, Johnny W. Bowens and David A. Yetman, and cross-appellant, Tucson Community Development and Design Center, Inc., an Arizona non-profit corporation, filed a petition for special action in superior court seeking a declaratory judgment and injunctive relief with respect to acts of the appellant City of Tucson and its mayor and council, which declared an area of the city blighted and established a redevelopment plan.

The trial court, sitting without a jury, on February 2, 1981, granted appellees the relief requested. It declared the ordinances adopted by the city to be illegal and void, and enjoined the appellant city from proceeding with the redevelopment plan. Findings of fact and conclusions of law were requested and made.

In this appeal the appellant reasserts the arguments it presented in the trial court:

1) The appellees had no standing to bring the action,

2) They were guilty of laches, and

3) The city's acts were not illegal.

In its cross-appeal the Design Center contends the trial court erred in dismissing it from the action on a finding that it had no standing.

Since we agree with the appellant that none of the trial court plaintiffs had standing to maintain the action and that the appellant did not act illegally, we consider only those issues and reverse.

The trial consumed several days and a myriad of exhibits were introduced. Even though we find the one issue of standing controlling, we believe it is necessary to review the facts in some detail. These facts are essentially those found by the trial court.

The La Entrada redevelopment project, which is the subject matter of this litigation, is in the downtown area of Tucson. The land involved is in the area once commonly known as "Snob Hollow." The concept of La Entrada was conceived sometime in 1976. It is one project, among others, undertaken by the city under Article 3 of Chapter 12 of Title 36, A.R.S. § 36–1471 et seq., entitled "Slum Clearance and Redevelopment." The city envisions the project as one which will encourage the revitalization of the downtown area by providing part of a significant residential component. The housing to be constructed would be high-density, designed for middle to upper income, young married couples and single persons. The appellees' objections arose as a result of this emphasis on housing for other than lower to moderate income families. We will return to this disagreement in our discussion of appellees' "standing."

Before the city can redevelop an area pursuant to A.R.S. § 36–1471 et seq., it must first adopt a resolution finding that the area is slum or blighted and redevelopment is necessary in the public · interest. A.R.S. § 36–1473. On August 1, 1977, the city adopted such a resolution with reference to the area encompassed in the La Entrada project. Although the city had employed a planner to study the area and that planner had prepared the ordinance subsequently adopted by the city council, no evidence concerning the blighted condition of the area was formally presented to the mayor and council. This is the alleged illegality found by the trial court, i.e., that this ordinance was adopted without receiving

any evidence of blight to support the resolution and that the appellant therefore acted arbitrarily and capriciously.

On October 23, 1978, the mayor and council approved and adopted, again by ordinance, the La Entrada Redevelopment Project. Prior to that date, the city purchased the first parcel of land for eventual use in La Entrada for approximately $700,000. After adoption of the plan, it acquired other lands for approximately $2,000,000. The city now owns this land. The city has not sustained any pecuniary loss as a result of any activities pertaining to the project.

All of the funds used to acquire these properties were provided by the federal community block grant program. This program was created by the Housing and Community Development Act of 1974, Public Law 93–383, 42 U.S.C.A. 5301 et seq., and is administered by the U.S. Department of Housing and Urban Development (HUD). In addition, planning expenses in the amount of $13,000 and administrative costs totaling almost $35,000 have been paid from the same federal source. *No city tax revenues have been spent for the project,* nor is there any evidence that any will be used in the future.

The appellees White and Yetman own real property within the city, live there and pay city property taxes. The appellee Bowens lives within the city but does not own real property there or pay city property taxes. Bowens claims to pay taxes indirectly through his rental payments, but we have been cited no authority that this qualifies him as a city taxpayer and we do not believe it does. The trial court found as a fact that he was a taxpayer. We find no evidence to support that finding.

The cross-appellant, Design Center, is a private, non-profit Arizona corporation. It owns property within the city, but there is no evidence showing that it has paid any taxes. Even though a non-profit corporation, it would be liable for taxes unless it or its use of its property came within an exception. A.R.S. § 42–271. *See Tucson Junior League of Tucson v. Emerine,* 122 Ariz. 324, 594 P.2d 1020 (App.1979). Since cross-appellant's claim to standing is for the most part based on being a taxpayer, it was required to show that it did pay or was liable to pay taxes. It failed to meet this burden. The trial court properly found that it had no standing. *See Smith v. Graham County Community College District,* 123 Ariz. 431, 600 P.2d 44 (App.1979). *See also Morgan v. Board of Supervisors,* 67 Ariz. 133, 192 P.2d 236 (1948) (defining "taxpayer").

We turn now to the other appellees' standing. The trial court found that appellees White and Yetman had standing because they were resident taxpayers. We disagree.

■ Since there has been no expenditure of funds raised by taxation and no pecuniary loss to the city, the mere status of resident taxpayer is insufficient to confer standing. *Dail v. City of Phoenix,* 128 Ariz. 199, 624 P.2d 877 (App.1980). The trial court apparently did not have the benefit of *Dail* since, although it was decided December 16, 1980, review by the supreme court was not denied until March 3, 1981.

The facts of the instant case place it squarely within the holding of Division One of this court in *Dail. Dail* involved an action by a taxpayer of the city of Phoenix for declaratory judgment and injunctive relief. The taxpayer claimed that the city had failed to observe several legal requirements when it purchased the Ahwatukee water system. No evidence showed any expenditure of city tax funds, and the system, which the city had operated for some time, was self-supporting. The court held that since there was no expenditure from funds raised by taxation and no pecuniary loss, the Phoenix taxpayer had no standing to maintain the action. *See also Franks v. Welch,* 389 S.W.2d 142 (Tex.Civ.App.1965); *Gruber v. Lincoln Hospital District,* 285 Or. 3, 588 P.2d 1281 (1979); *Alexander v. City of Greenville,* 585 S.W.2d 333 (Tex.Civ.App. 1979). The court rejected the argument also made, at least inferentially, by appellees, that showing the illegality of a contract is enough to confer standing. It held that before the trial court can consider al-

leged illegality the taxpayer must "first show some interest beyond a general desire to enforce the law." 128 Ariz. at 202, 624 P.2d at 880.

The trial court relied upon three Arizona cases: *Smith, supra; Armer v. Superior Court*, 112 Ariz. 478, 543 P.2d 1107 (1975); and *Folk v. City of Phoenix*, 27 Ariz.App. 146, 551 P.2d 595 (1976). None of these decisions supports the conclusion that the appellees have standing, particularly in view of *Dail.*

*Smith* held that a taxpayer resident of the Graham County Community College District had standing to bring an action to enjoin an unlawful expenditure of funds by the district. The district had solicited bids for a major roof alteration on one of its buildings. The bids were so high that the district proposed to accomplish the alteration with its own employees. Since the cost of the work exceeded $5,000, A.R.S. § 34–201 required the bidding procedure. For the district to proceed without readvertising and subsequently letting the contract to the successful bidder would be unlawful. There was no question that an illegal expenditure of tax funds was involved. In *Smith* we relied upon the reasoning in *Ethington v. Wright*, 66 Ariz. 382, 189 P.2d 209 (1948) that:

> "The right to maintain such suits is based upon the taxpayers' equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation." 66 Ariz. at 386, 189 P.2d at 212.

*See also Secrist v. Diedrich*, 6 Ariz.App. 102, 430 P.2d 448 (1967). Since the instant case does not involve either the expenditure or the proposed use of tax revenues, *Smith* is inapposite.

*Armer* was an action by residents of a county within a multi-county water conservation district, seeking compliance with financial disclosure requirements by directors of the district. It was a special action in the nature of mandamus. After recognizing that the trial court petitioners were citizens and taxpayers, the supreme court held they were "beneficially interested" in having the directors comply with the financial disclosure law. The descriptive words "beneficially interested" were important since they appear in A.R.S. § 12–2021,[1] the statute which provides for the issuance of a writ of mandamus.

Where the relief sought is mandamus pursuant to A.R.S. § 12–2021, the object is to procure the enforcement of a public duty. The taxpayer citizen is permitted to represent the public in seeking such enforcement by persons who are obligated to perform by virtue of the office or public position they hold. Thus in *Armer* the petitioners sought to have the directors file financial disclosure statements. In an action for mandamus the taxpayer need not show an expenditure of tax funds or a pecuniary loss by the governmental body. *Gruber, supra*; 74 Am.Jur.2d Taxpayers' Actions § 43. Thus we find *Armer* to be distinguishable from the instant case.

*Folk* involved multiple questions of standing. The decision recognizes the general rule, set forth in *Ethington*, that a resident taxpayer may seek judicial relief to prevent the unlawful expenditure of tax money. We have already distinguished this aspect of *Folk*. The supreme court also held that the plaintiffs claiming certain prescriptive rights in lands over which the City of Phoenix proposed to construct a roadway had standing because of this special claim. In the instant case appellees have no such special interest in testing the validity of appellant's development plan. They do not live within the area or in proximity to it, and claim no interest in any of the lands affected.

1. "A writ of mandamus may be issued by the supreme or superior court to any person, inferior tribunal, corporation or board, though the governor or other state officer is a member thereof, on the verified complaint of the party beneficially interested, to compel, when there is not a plain, adequate and speedy remedy at law, performance of an act which the law specially imposes as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

The appellees all testified that their reason for bringing this action was their concern that federal funds provided by the community development block grant program should be used for housing for lower and moderate income people. In addition, appellee Yetman believed the blight declaration to be not only an illegal but also an immoral act. The appellees have been active in support of projects which would benefit low to moderate income persons in · the area of housing. Such activity is the very object of the Design Center and the purpose for its existence. These concerns, however commendable, do not confer standing. The appellant's decision to approve La Entrada and fund it with federal monies was a legislative act of the mayor and council. The evidence shows that, insofar as it has been planned to date, the federal agency charged with the administration of the program, HUD, has approved La Entrada. As the court said in *Folk v. City of Phoenix, supra* :

"Questions as to the wisdom of a legislative act, as to its expediency or concerning the soundness of the policy outlined therein, must be left to the legislative branch of the government and such matters are not the proper realm of the courts." 27 Ariz.App. at 140, 551 P.2d at 599.

In *Henderson v. McCormick*, 70 Ariz. ·19, 215 P.2d 608 (1950), our supreme court stated:

"There is unanimity in the authorities that where the plaintiffs as taxpayers, or the taxpayers as a class, sustain no injury ... The suit was improvidently brought by plaintiffs and to uphold the judgment of the lower court would encourage disgruntled citizens to resort to the courts in the guise of taxpayer suits, thereby, in effect, taking over and throttling the administration of municipal affairs." 70 Ariz. at 25, 215 P.2d at 611–612.

*See also Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Knoxville Progressive Christian Coalition v. Testerman*, 404 F.Supp. 783 (E.D.Tenn.1975).

The appellees present two other arguments. First, they contend that even if no tax proceeds have been used directly, since regular city employees have performed services in furtherance of the project, this is sufficient for the court to find that the city has spent tax revenues. No authority cited to us supports this reasoning and we have found none. We daresay the same contention could have been made in *Dail* and other cases cited. Such evidence is insufficient to create standing.

The appellees' second argument seems to be that La Entrada may involve the expenditure of tax revenues in the future or that, although there has been no pecuniary loss to the city as yet, there may be financial loss in the future. While it is of course possible that future events may produce such a result, we find this argument conjectural and speculative. *Gruber, supra.* This contention is also addressed to some extent in *Dail.* The citizen there argued, strangely, that if the court granted him relief the city's water supply would be affected and the city would have to provide another source of water for the Ahwatukee users. Division One rejected this argument:

"To base his standing on events that might be precipitated by the court's determination of the merits in his favor is unacceptable." 128 Ariz. at 203, 624 P.2d at 881.

We believe the same reasoning would apply to the appellees' argument here.

In their petition for special action the appellees alleged that the designation of the La Entrada area as blighted was a clearly erroneous finding of fact; that the appellants arbitrarily and capriciously abused their legislative discretion by making such erroneous designation; that there was no factual basis upon which to base their finding of blight; and that this finding of fact was "pro forma" only, made solely to conform with statutory requirements, in disregard of the truth. The appellants denied these allegations. Thus, issue was joined on the question of whether the appellants' blight declaration was arbitrary.

At the trial both sides presented evidence concerning the blighted condition, if any, of the area. Instead of deciding the issue, the trial court chose to rule that since the mayor and council did not receive evidence of blight at the initial meeting in which the resolution of blight was adopted, their legislative act was arbitrary and capricious and therefore illegal.

■ The trial court erred. Nothing in the slum clearance and redevelopment act, A.R.S. § 36–1471 et seq., requires the mayor and council to conduct a hearing, much less receive evidence, at the time they make the findings of necessity required by A.R.S. § 36–1473. This section provides only:

"No municipality shall exercise any of the powers conferred upon municipalities by this article until its local governing body adopts a resolution finding that:

1. One or more slum or blighted areas exist in the municipality, and

2. The redevelopment of such area or areas is necessary in the interest of the public health, safety, morals or welfare of the residents of the municipality."

Subsequent provisions of the legislative enactment do provide for public hearings. A.R.S. § 36–1479(E) requires a noticed public hearing prior to the approval of a redevelopment plan or substantial modification thereof. A.R.S. § 36–1480(C) likewise provides for detailed public notice prior to the consideration of any redevelopment contract.

The legislative requirement that these findings be made by the governmental body is analogous to the requirement that the condemning body make findings of necessity in eminent domain. A.R.S. § 12–1112. The proper scope of judicial review is set forth in *City of Phoenix v. McCullough*, 24 Ariz.App. 109, 536 P.2d 230 (1975), ". . . a condemnor's determination of necessity should not be disturbed on judicial review in the absence of fraud or arbitrary and capricious conduct." In arriving at this conclusion Division One of our court reviewed the development of this law beginning with *Mosher v. City of Phoenix*, 39 Ariz. 470, 7 P.2d 622 (1932), which con-

cerned a determination of the amount of land necessary for a street widening. The *Mosher* court said:

"The court, in our opinion, properly held that this was concluded by the legislative body of the city declaring the necessity." 39 Ariz. at 482, 7 P.2d at 626.

Division One noted that this same language was approved in *Citizens Utilities Water Co. v. Superior Court*, 108 Ariz. 296, 497 P.2d 55 (1972) cert. denied 409 U.S. 1022, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972), but then observed that the court in *Citizens Utilities* proceeded to review the evidence presented to determine whether the action of the city council was arbitrary.

This does not mean that the court reviews the evidence, if any, which was before the governmental body when it adopted the initial resolution of necessity. It means that the court may receive evidence at trial on the issue of necessity vel non and may determine, from that evidence, whether the resolution of necessity was arbitrary. If the evidence is such that the city could reasonably have found necessity, or in the case before us, a condition of blight, the resolution is not arbitrary. "Even if the City's action . . . is reasonably doubtful . . . or even fairly debatable, we cannot substitute our judgment for that of the City Council." *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corp.*, 518 S.W. 11, 16 (Mo.1974).

A review of the cases discloses that evidence in the form of studies and reports is often considered by the governmental body even though unnecessary. This same evidence is then often admitted in the trial court and the appellate court may discuss it as "evidence which was before the governmental body." Such discussion must not be considered as a requirement of any kind that evidence initially be received by the legislative body.

This principle is further supported by *Chambers v. State*, 82 Ariz. 278, 312 P.2d 155 (1957), a condemnation proceeding by the state involving the taking of additional land for Arizona State College (now North-

ern Arizona University). The court was called upon to determine if the evidence presented to it was sufficient to support a finding of necessity under A.R.S. § 12–1112, and it is readily apparent that the evidence of necessity considered by the trial court and reviewed by the supreme court was the evidence introduced in the trial court.

An analogy may also be made to the role of the court in cases involving zoning ordinances, *See City of Phoenix v. Oglesby,* 112 Ariz. 64, 537 P.2d 934 (1975); *Klensin v. City of Tucson,* 10 Ariz.App. 399, 459 P.2d 316 (1969), and in cases involving annexation, *See Taylor v. City of Chandler,* 17 Ariz.App. 346, 498 P.2d 158 (1972), and in cases involving legislative declarations of emergency, *See City of Phoenix v. Landrum & Mills Realty Co.,* 71 Ariz. 382, 227 P.2d 1011 (1951); *City of Tucson v. Jacobson,* 113 Ariz. 534, 558 P.2d 686 (1976). In none of these cases does the court review what evidence, if any, was before the legislative body; rather the court review is of evidence presented at trial and then only to determine if the legislative act was arbitrary.

Cases from other jurisdictions concerning the scope of judicial review of resolutions adopted under redevelopment statutes are in accord. *Parking Systems, Inc., supra; Allright Missouri, Inc. v. Civic Plaza Redevelopment Corp.,* 538 S.W.2d 320 (Mo.1976); *West v. City Commission of Garden City,* 214 Kan. 473, 520 P.2d 1290 (1974); *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699 (1959); *Gohld Realty Co. v. City of Hartford,* 141 Conn. 135, 104 A.2d 365 (1954); *Kaskel v. Impellitteri,* 306 N.Y. 73, 115 N.E.2d 659 (1953); *Schenck v. City of Pittsburgh,* 364 Pa. 31, 70 A.2d 612 (1950).

Blight cases from other jurisdictions, cited by appellees, which require a high standard of evidence and therefore permit a different judicial review are distinguishable. In *Regus v. City of Baldwin Park,* 70 Cal.App.3d 968, 139 Cal.Rptr. 196 (1977) the court engaged in "substantial evidence" review because the initial determination of blight had been made by an administrative agency rather than by a legislative body.

In *Edwards v. City Council of City of Seattle,* 3 Wash.App. 665, 479 P.2d 120 (1970) evidence presented to the city council was reviewed because the relevant Washington statute required the council to conduct a hearing and receive evidence in what the court called a "quasi-legislative" procedure for declaring blight. And in *Boston Edison Co. v. Boston Redevelopment Authority,* 374 Mass. 37, 371 N.E.2d 728 (1977) the court explains that the findings of an agency, as opposed to a legislative body, are subject to a broader scope of review. None of the redevelopment cases to which we have been referred, or which we have examined, hold that a governmental body exercising legislative powers must receive evidence of blight before it can lawfully adopt a resolution declaring a certain area to be blighted.

In our opinion the facts of this case illustrate the wisdom of the law. The record is clear that no direct evidence of blight was presented to the mayor and council when the declaration of blight ordinance was adopted. The record is equally clear that the members of the council were personally familiar with the area, if for no other reason than because it lies directly adjacent to City Hall. The record further shows that La Entrada is only a part of an extensive redevelopment plan for the downtown Tucson area commenced as early as 1957. Thus the consideration of this area and its significance as a part of a total development concept was a logical extension of other legislative decisions by the mayor and council.

The initial findings required to be made by the governmental body may well be just what the appellees allege—"pro forma." Nevertheless the court may not inquire into the motives or purposes of the legislative body. *Mosher v. City of Phoenix, supra* ; Annotation 32 A.L.R. 1517; 5 McQuillan, *Municipal Corporations,* § 16.90.91 (1969); Rhyne, *The Law of Local Government Operations* §§ 8.4 and 8.10 (1980); *City of Miami Beach v. Schauer,* 104 So.2d 129 (Fla. App.1958).

Almost one hundred years ago, the rule was stated by the Supreme Court of the

United States in *Angle v. Chicago, St. P., M. & O. R. Co.*, 151 U.S. 1, 18, 14 S.Ct. 240, 247, 38 L.Ed. 55, 64 (1894), as follows:

"The rule upon which this decision rests has been followed in many cases and has become a settled rule of our jurisprudence. The rule, briefly stated, is that whenever an act of the legislature is challenged in court the inquiry is limited to the question of power, and does not extend to the matter of expediency, the motives of the legislators, or the reasons which were spread before them to induce the passage of the act."

Were it not for our conclusion that this case must be reversed for lack of standing, we would remand to the trial court with directions to decide whether the challenged resolution was arbitrary under the standard of review we have enunciated, i.e., was the condition of the area as to blight reasonably debatable?

Since the appellees lacked standing to maintain the action, we reverse and remand with directions to dismiss the action.

HATHAWAY, C. J., and HOWARD, J., concur.